STATE of Wisconsin, Plaintiff-Respondent,

v.

Rebecca J. KENNEDY, Defendant-Appellant.

Court of Appeals

*No. 94–2822–CR. Submitted on briefs March 13, 1995.—Decided April 18, 1995.*

(Also reported in 535 N.W.2d 43.)

For the defendant-appellant the cause was submitted on the briefs of *Suzanne Hagopian*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general and *Peter J. Cannon*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Rebecca Kennedy appeals a judgment of conviction for one count of food stamp fraud, contrary to § 49.127(2m), STATS. Lee LaChappelle, a Shawano County welfare fraud investigator, conducted surveillance of Kennedy's home over a one-month period. Based on evidence derived from the surveillance, LaChappelle obtained a warrant to search Kennedy's home. Kennedy now contends that the trial court erred by failing to suppress the evidence that LaChappelle obtained through his surveillance of her home because he conducted the surveillance from the curtilage of her home without a search warrant in violation of the Fourth Amendment to the United States Constitution and § 11 of the Wisconsin Constitution. Further, Kennedy argues that because the search warrant was based on evidence obtained during the surveillance of her home, the trial court erred by failing to suppress all evidence seized pursuant to the warrant as "fruit of the poisonous tree." Because we conclude that LaChappelle did not conduct his surveillance activities from within the curtilage of Kennedy's home, the judgment is affirmed.

At the time of the events giving rise to this case, Rebecca Kennedy was renting a home from Kevin Pallex on property located in rural Shawano County. The property borders County Highway H to the north and is surrounded by woods on the south, east and west. In addition to the home, which is set back approximately 400 feet from the highway, the property has several freestanding buildings, including a sauna, barn and pump house. The outhouse and sauna are located inside the treeline to the south of the house, and the barn and pump house are located inside the treeline to the southeast of the house.

Kennedy, who was receiving public assistance pursuant to ch. 49, STATS., informed the Shawano County Department of Social Services that she and her three children were living alone. In March 1992, however, Lee LaChappelle received an anonymous tip that Kennedy was living with Pallex. Relying on this tip, LaChappelle conducted his surveillance of Kennedy's home between April and May 1992 to determine the validity of the tip. On each of the nineteen times LaChappelle conducted surveillance of Kennedy's home, he did so from one of the following four locations: (1) in the treeline behind a brush pile to the west of the home; (2) in the trees from a location to the northwest of the home; (3) in the trees from a location to the south of the home and outhouse; and (4) in trees from a location to the southwest of the home and barn.

Based on observations made during the course of his surveillance, LaChappelle obtained a warrant to search Kennedy's home. During the execution of the warrant, LaChappelle and a second officer discovered Pallex in Kennedy's home, along with his clothes and other personal possessions. The officers also obtained incriminating statements from both Kennedy and Pallex.

Kennedy subsequently filed a motion to suppress all evidence obtained in the search, including the statements made by Kennedy and Pallex. Kennedy argued that LaChappelle's surveillance of her home was unconstitutional because it was conducted from within the curtilage of her home without a warrant. Kennedy further argued that because the search warrant was based on evidence gathered during LaChappelle's surveillance, all evidence seized pursuant to the warrant should be suppressed as fruit of the poisonous tree. The

trial court denied Kennedy's motion, concluding that "Mr. LaChappelle never got on the so-called curtilage."

At trial, LaChappelle testified at length as to the observations he made during the course of his surveillance, and the evidence obtained during execution of the search warrant. Additionally, the incriminating statements taken from Kennedy and Pallex were admitted into evidence. At the conclusion of the trial, the jury found Kennedy guilty of welfare fraud in violation of § 49.127(2m), STATS.

The issue whether LaChappelle's surveillance of Kennedy's home was unconstitutional under the Fourth Amendment to the United States Constitution and § 11 of the Wisconsin Constitution presents a mixed question of law and fact. We review the trial court's findings of historical fact under the clearly erroneous standard. *State v. Lange*, 158 Wis. 2d 609, 617, 463 N.W.2d 390, 392-93 (Ct. App. 1990). Once the facts are established, whether the area in question is so intimately tied to the home itself that it should be considered curtilage within the protections of the Fourth Amendment is a question of constitutional fact that we review without deference to the trial court. *See id.* at 617, 463 N.W.2d at 393.

Kennedy contends that the evidence obtained during the course of LaChappelle's surveillance was unconstitutional because he conducted the surveillance from within the curtilage of her home without a warrant. The trial court, however, found that LaChappelle conducted his surveillance from locations outside the treeline. The trial court's finding is supported by the evidence.

■ At the suppression hearing, LaChappelle testified that he conducted his surveillance from four different locations that ranged from 50 to 100 yards from the home. Further, LaChappelle stated that while using binoculars at a location in the treeline approximately 100 yards from Kennedy's home, he observed dew on Pallex's vehicle. LaChappelle testified that he conducted his surveillance from behind the treeline at all four of the surveillance points. LaChappelle stated that he remained in the treeline for concealment purposes. Based on LaChappelle's testimony at the suppression hearing, we conclude that the trial court's finding that each of LaChappelle's observations was made from locations outside the treeline is not clearly erroneous. Accordingly, we shall rely upon the trial court's findings to determine whether LaChappelle conducted his surveillance from the curtilage of Kennedy's home.

■ Although the Fourth Amendment extends protection to the curtilage of one's home, "the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987). In *Dunn*, the Supreme Court enunciated the following four-factor test to determine whether an area is properly considered part of the home's curtilage: (1) The proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. *Id.* at 301.

Kennedy concedes that her curtilage is defined by the treeline that surrounds her home and argues that LaChappelle violated her Fourth Amendment rights by entering the curtilage of her home without a warrant. We agree that Kennedy's curtilage stops at the treeline. Although the distance between the house and the treeline varies, the record shows that the treeline is a sufficient distance from the house such that the areas beyond the treeline should not be treated as an adjunct of the house. Further, the areas beyond the treeline are not included within an enclosure surrounding the house and are not used for intimate activities of the home. Finally, there is nothing in the record to suggest that Kennedy took steps to protect the areas beyond the treeline from observation by people passing by. Accordingly, we conclude that Kennedy's curtilage extended only to the treeline surrounding her home.

■

Having concluded that the maximum extent of Kennedy's curtilage is demarcated by the treeline, we must next determine whether LaChappelle invaded the curtilage of her home. Looking at the record, there is no evidence to support Kennedy's claim that LaChappelle entered the home's curtilage while conducting his surveillance from the four locations in question. Indeed, both the record and the trial court's findings indicate that LaChappelle's surveillance from these four locations was done completely outside the treeline.[1] The locations outside the treeline are not

---

[1] The record shows that LaChappelle also conducted a brief period of surveillance from a location within the treeline that was behind a log pile more than 200 feet from the house. Kennedy's brief, however, only addresses the four surveillance locations within the treeline. Accordingly, we need not address

part of the curtilage of Kennedy's home. Thus, because observations made from outside the curtilage do not violate the homeowner's Fourth Amendment rights, LaChappelle did not infringe upon Kennedy's Fourth Amendment rights. *See State v. Peck*, 143 Wis. 2d 624, 640, 422 N.W.2d 160, 166 (Ct. App. 1988) ("observations from outside the curtilage of activities within are not generally interdicted by the Constitution") (quoting *Fullbright v. United States*, 392 F.2d 432, 434 (10th Cir. 1968)). Further, we note that LaChappelle's use of binoculars from outside the curtilage does not violate the Fourth Amendment. *Peck*, 143 Wis. 2d at 640, 422 N.W.2d at 166-67. Therefore, we conclude that LaChappelle's surveillance activities, and the evidence derived therefrom, did not violate the strictures of the Fourth Amendment.

In the interest of clarity, we note that if the treeline were immediately adjacent to Kennedy's outhouse or sauna, Fourth Amendment implications may arise because the treeline would not necessarily define the curtilage. In such a case, Kennedy's expectation of privacy in the area surrounding these structures, which are intimately related to her home activities, may warrant an extension of the curtilage beyond the treeline.

---

this issue on appeal. *Reiman Assocs. v. R/A Advertising*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981). However, even were we to apply a *Dunn* analysis, we would conclude that this location was not within the curtilage of Kennedy's home. Although this location was within the treeline, it was more than 200 feet from Kennedy's house and there is nothing to suggest that the location was part of, or in close proximity to, an area that was intimately related to the house. Thus, because this location could not reasonably be considered part of the home itself, we conclude that it was not within the curtilage. *United States v. Dunn*, 480 U.S. 294, 300 (1987).

Here, the record does not disclose how close the sauna and outhouse are to the treeline. However, we need not concern ourselves with this question because the record shows that LaChappelle was at least forty feet from the outhouse and sauna and was not within the treeline where the structures were located. In fact, LaChappelle testified that he never saw the outhouse during the course of his surveillance activities. Accordingly, we conclude that the trial court properly denied Kennedy's motion to suppress.

*By the Court.*—Judgment affirmed.