STATE of Wisconsin, Plaintiff-Respondent,

v.

Melvin THOMPSON, Defendant-Appellant.†

Court of Appeals

*No. 97–2744–CR. Submitted on briefs July 2, 1998.—Decided September 24, 1998.*

(Also reported in 585 N.W.2d 905.)

†Petition to review denied.

180

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Philip J. Brehm* of Janesville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Maureen McGlynn Flanagan*, assistant attorney general with whom on the brief was *James E. Doyle*, attorney general.

Before Dykman, P.J., Eich and Deininger, JJ.

DEININGER, J. Melvin Thompson was convicted of possession of a controlled substance with intent to deliver near a park, and of obstructing an officer. Thompson appeals his convictions and the trial court's denial of his motion for a new trial. Thompson contends that police improperly obtained physical evidence during an illegal search in the emergency and operating rooms of a hospital where Thompson was treated for a drug overdose. On this basis, Thompson claims on appeal that his trial counsel was ineffective in failing to have the evidence suppressed. Because we conclude that the physical evidence was not gathered during an illegal search, and thus, that it was properly admitted, we affirm Thompson's convictions and the order denying a new trial.

## BACKGROUND

The facts relevant to Thompson's appeal are not disputed. Thompson was a passenger in a car stopped by Madison police for a routine traffic violation near a park. The police arrested the driver, and they delivered Thompson to an address on Magnolia Lane in Madison.

About an hour later, police and fire rescue personnel responded to an emergency call on Magnolia Lane. A man, who turned out to be Thompson, was reported to be having seizures, apparently from a drug overdose.

A Madison police officer arrived at the scene shortly after the ambulance left with Thompson. The officer found out where Thompson had been taken and followed to the hospital. Hospital staff directed the officer to the emergency room where Thompson was receiving treatment. Thompson was unconscious, and still suffering from seizures. One of the fire rescue personnel who responded to the call told the officer that a bystander had said that Thompson had swallowed several bags of cocaine when the car in which he was a passenger was stopped by police. Most of Thompson's clothing had been removed and was on the floor, along with a pager and a $100 bill. The officer picked up Thompson's clothing, the pager and the $100 bill and gave them to a second officer who had come to the hospital.

On the basis of information provided by a police officer—that Thompson had likely ingested a substantial quantity of cocaine—the doctor treating Thompson determined that without surgery to remove the ingested drugs, Thompson risked death. The police did not suggest surgery to the doctor. A police detective directed one of the officers to remain at the hospital and to take custody of the cocaine when it was removed from Thompson. Hospital staff provided the officer with operating room clothing, and the officer entered the operating room and observed the surgery. The doctor removed three bags of cocaine from Thompson's small intestine. The remains of a fourth bag, which had apparently ruptured, were removed from Thompson's stomach via his mouth. The bags were placed in a

container and given to the officer. Thompson was not arrested while he was in the hospital; he fled from the hospital after several days and was arrested sometime later.

Before trial, Thompson moved to suppress the evidence police had obtained at the hospital on the grounds that it was seized during a warrantless and unreasonable search, contrary to the United States and Wisconsin Constitutions. The trial court denied the motion, concluding that the recovery of the cocaine did not constitute a search under the Fourth Amendment because the doctor was not an agent of the state when he performed the surgery. A jury convicted Thompson of possession of a controlled substance with intent to deliver near a park, contrary to §§ 161.41(1m)(cm)1 and 161.49, STATS., 1993–94,[1] and obstructing an officer, contrary to § 946.41(1), STATS.[2] Thompson then moved for a new trial, asserting that his trial counsel was ineffective in failing to argue that the officer's presence in the emergency and operating rooms violated Thompson's right to confidentiality in his medical records under § 146.82, STATS., which constituted an alternate and allegedly meritorious basis for suppressing the evidence under the Fourth Amendment. The trial court denied the motion, concluding that § 146.82 was inapplicable because the officer did not gain access to medical records, and that because the officer was lawfully in the emergency and operating

---

[1] In 1995 these statutes were recodified in Chapter 961. *See* 1995 Wis. Act 448, §§ 245, 289.

[2] The obstructing charge was based on Thompson's giving a false name to officers when the car in which he had been a passenger was stopped. Thompson does not challenge in this appeal his conviction on this misdemeanor offense.

rooms, the officer could confiscate contraband within his plain view.

Thompson appeals his conviction for the controlled substance offense and the denial of his motion for a new trial.

## ANALYSIS

Thompson contends on appeal, as in his motion for a new trial, that the officer's collection of physical evidence at the hospital was an unreasonable search and seizure in violation of the Fourth Amendment to the U.S. Constitution and Article I, § 11 of the Wisconsin Constitution,[3] and that the evidence should have been suppressed. Thompson does not dispute the trial court's determination that the surgery itself was not an unlawful search. Thompson argues only that the officer's presence in the emergency room and the operating room constituted an unlawful search because the officer's presence in these areas violated Thompson's statutory right to confidentiality in his medical records under § 146.82, STATS. Thompson also cites § 905.04, STATS., which establishes the physician-patient evidentiary privilege, to support his contention that he had the authority to exclude the officer from the treatment areas of the hospital. We conclude that §§ 146.82 and 905.04, STATS., do not, in themselves, prohibit the officer from being present in the treatment areas of the hospital, and that the officer's presence did not constitute a search within the meaning of the Fourth Amendment.

---

[3] The Fourth Amendment to the U. S. Constitution and Article I, § 11 of the Wisconsin Constitution provide, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

A search occurs when the police infringe on an expectation of privacy that society considers reasonable. *See United States v. Jacobsen,* 466 U.S. 109, 113 (1984); *State v. Edgeberg,* 188 Wis. 2d 339, 345, 524 N.W.2d 911, 914 (Ct. App. 1994). Only if we first conclude that the officer's conduct infringed on Thompson's legitimate expectation of privacy, and thus constituted a search, will we then inquire whether the officer's conduct was proper under the Fourth Amendment. *See State v. Rewolinski,* 159 Wis. 2d 1, 12–13, 464 N.W.2d 401, 405 (1990). Whether the officer's actions constituted an unreasonable search is a question of law which we review de novo. *See Edgeberg,* 188 Wis. 2d at 344–45, 524 N.W.2d at 914. However, we review the trial court's findings of historical fact only for clear error. *See State v. Kennedy,* 193 Wis. 2d 578, 583, 535 N.W.2d 43, 45 (Ct. App. 1995).

The threshold question in this appeal, then, is whether Thompson may claim a reasonable expectation of privacy in the areas of the hospital in which the officer collected the evidence. The burden is on Thompson, as the one claiming Fourth Amendment protection, to show that the search was illegal and that he had a reasonable expectation of privacy in the premises or property. *See Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980); *Rewolinski,* 159 Wis. 2d at 13–16, 464 N.W.2d at 405–07.

No published Wisconsin case has specifically addressed whether one has a reasonable expectation of privacy in a hospital emergency room or operating room. Accordingly, we analyze the question under the general approach for determining whether a person has a reasonable expectation of privacy in an area

185

where evidence is gathered. *See State v. Dixon,* 177 Wis. 2d 461, 468, 501 N.W.2d 442, 445 (1993). Whether a person has a reasonable expectation of privacy depends on (1) whether the individual has exhibited an actual, subjective expectation of privacy in the area inspected and in the item seized, and (2) whether society is willing to recognize such an expectation of privacy as reasonable. *See id.*

Any analysis of the subjective first prong of the test is hampered by the fact that Thompson did not, and could not, exhibit a subjective expectation of privacy because he was unconscious during the entire time the officer was at the hospital. Accordingly, we focus first on the objective second prong of the test: whether society would recognize as reasonable an expectation of privacy in the areas of the hospital in which the officer collected the evidence.

The Wisconsin Supreme Court has identified several factors relevant to a determination of whether society would recognize an expectation of privacy as reasonable. These include: (1) whether one has a property interest in the premises; (2) whether one was legitimately on the premises; (3) whether one has complete dominion and control and the right to exclude others; (4) whether one took precautions those seeking privacy take; (5) whether one put the property to some private use; and (6) whether the privacy claim is consistent with historical notions of privacy. *See Dixon,* 177 Wis. 2d at 469, 501 N.W.2d at 446 (citing *State v. Fillyaw,* 104 Wis. 2d 700, 711–12 n.6, 312 N.W.2d 795, 801 (1981)); *see also Rakas v. Illinois,* 439 U.S. 128 (1978) and *State v. West,* 185 Wis. 2d 68, 90, 517 N.W.2d 482, 490 (1994). This list of factors is neither controlling nor exclusive. Rather, the totality of the

circumstances is the controlling standard. *Dixon*, 177 Wis. 2d at 469, 501 N.W.2d at 446.

Thompson contends that the application of the *Dixon* factors to the present facts demonstrates that he had a reasonable expectation of privacy in the areas of the hospital in which the evidence was collected.[4] We conclude, however, that Thompson had no reasonable expectation of privacy in the emergency room or the operating room, and thus the officer's actions did not constitute a search under the Fourth Amendment.

Thompson does not argue that the first, fourth or fifth factors weigh in favor of a conclusion that society would recognize as reasonable an expectation of privacy in the emergency and operating rooms of the hospital. We agree that these factors are either neutral on the present facts, or they point away from a reasonable expectation of privacy: Thompson had no property interest in the hospital or these two rooms; he did not take precautions customarily taken by those seeking privacy; and he did not put the two rooms to private use. Thompson correctly claims, however, that the second factor weighs in favor of determining that he had a reasonable expectation of privacy: he was legitimately on the premises of the hospital to receive emergency treatment.

---

[4] Thompson does not distinguish between the two potential searches which occurred in the emergency room and the operating room. We will follow Thompson's approach and apply a single analysis to both areas of the hospital. Although we conclude that Thompson did not have a reasonable expectation of privacy in either treatment area, we do not conclude that, in all cases, one would necessarily have the same expectation of privacy in an emergency room as one would have in an operating room.

Thompson also argues that factors three and six weigh in favor of determining that he had a reasonable expectation of privacy. We disagree. Thompson first contends that he had the right to exclude others from the areas of the hospital in which he received treatment. In support of this assertion, Thompson invokes § 146.82, STATS.,[5] which provides that patient health care records must remain confidential, subject to certain exceptions, none of which apply here. Thompson urges us to interpret § 146.82 to not only protect the confidentiality of patient health care records, but also to restrict access to medical procedures themselves. Thompson's proffered interpretation, however, is contrary to the plain language of the statute, which provides that "[a]ll patient health care records shall remain confidential." Section 146.82. The statute defines a patient health care record to include "all records related to the health of a patient prepared by or under the supervision of a health care provider . . . ." Section 146.81(4), STATS. By its terms, the statute applies to only records, not to medical procedures themselves or to places where medical procedures are performed.

Thompson argues that an interpretation limiting the application of § 146.82, STATS., exclusively to medical records produces an absurd result, in that it would permit a person to observe directly a medical procedure even though he or she would be prohibited from read-

---

[5] Section 146.82, STATS., provides in relevant part:

(1) CONFIDENTIALITY. All patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient. This subsection does not prohibit reports made in compliance with s. 146.995 or testimony authorized under s. 905.04 (4) (h).

ing the written record of that procedure. Thus, despite the plain language of the statute, Thompson would have us construe it broadly to grant patients a right of confidentiality in not only their medical records but also in areas where they receive medical treatment.

We reject Thompson's argument, first, because we see no absurdity in confining the scope of § 146.82, STATS., to the plain language of its provisions. Section 146.82 protects the confidentiality of the records of medical treatment, but it does not purport to interfere with a physician's autonomy during treatment itself. Decisions regarding who may be present during a medical procedure are generally left to a physician or other supervising medical personnel, and accordingly, we will not construe § 146.82 as granting Thompson the right to exclude others from the emergency room or the operating room.

More importantly, however, even if we were to interpret § 146.82, STATS., as prohibiting a supervising physician from allowing an officer to witness Thompson's surgery, the remedies for a violation of § 146.82 do not include the exclusion of the evidence in Thompson's trial. *See* § 146.84, STATS.; *see also State v. Mieritz*, 193 Wis. 2d 571, 574, 534 N.W.2d 632, 633 (Ct. App. 1995) (exclusion of evidence is required only when the evidence is obtained in violation of a defendant's constitutional rights, or in violation of a statute that expressly requires exclusion). In this respect, § 146.82, STATS., is analogous to the law of trespass: an officer's intrusion onto property may be a trespass and yet not violate the Fourth Amendment. *See Oliver v. United States*, 466 U.S. 170, 183–84 (1984). Likewise, a violation of the confidentiality rules for medical records under § 146.82, STATS., is not necessarily a violation of the Fourth Amendment.

Thompson also claims, without supporting argument or authority, that § 905.04, STATS.,[6] also prohibits medical personnel from allowing a police officer to be present in the treatment areas of a hospital. Thompson is incorrect. Section 905.04 creates an evidentiary privilege only. The rule makes certain information relating to medical treatment or diagnosis inadmissible as evidence in a court proceeding, but it does not regulate the conduct of physicians outside the courtroom. *See* § 901.01, STATS.; *Steinberg v. Jensen*, 194 Wis. 2d 439, 464, 534 N.W.2d 361, 370 (1995); *see also* 64 Wis. Op. Att'y Gen. 82 (1975). Accordingly, § 905.04, STATS., does not give Thompson a right to exclude others from the treatment areas of the hospital.[7]

---

[6] Section 905.04(2), STATS., provides as follows:

(2) GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor.

[7] Thompson does not claim that § 905.04, STATS., applies directly to the cocaine removed from his body, making it inadmissible on statutory grounds, nor did he make that claim in the trial court. As we have noted, Thompson's motion for postconviction relief was grounded solely on his assertion that trial counsel was ineffective for failing to argue a proper rationale for the suppression of evidence on constitutional grounds. Because Thompson has not raised, nor adequately briefed in this appeal, the issue of whether the cocaine was inadmissible under

We conclude that nothing in the two statutes he cites gives Thompson the authority to exclude others from the treatment areas of the hospital, and that, in fact, he had no such right. Thus, the third factor does not weigh in favor of a reasonable expectation of privacy in the emergency room or the operating room of the hospital. Rather, Thompson's lack of dominion and control over these areas points to the opposite conclusion.

As for the sixth factor, Thompson contends that his expectation of privacy in the operating room and the emergency room is consistent with historical notions of privacy. In support of this contention, Thompson cites the testimony of a retired registered nurse that hospital operating rooms and emergency rooms are closed to the general public for reasons of confidentiality and to maintain sterile conditions. The nurse's testimony is unhelpful, however, because the police officer was not a member of the "general public." The officer was in the emergency room and the operating room with the consent of the hospital staff while pursuing his official duties.

Thompson asserts, however, that the officer's entry into the treatment areas of the hospital is analogous to a police officer's search of a home with the permission of someone having no ties to the residence. That situation is not analogous to the facts of this case. First, there is generally no dispute that a person enjoys a reasonable expectation of privacy in his or her place

§ 905.04, we do not consider it. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992). Furthermore, because Thompson did not raise this issue in the trial court at his *Machner* hearing, we will not consider it here. *See State v. Giebel*, 198 Wis. 2d 207, 218, 541 N.W.2d 815, 819 (Ct. App. 1995).

of residence, while here, whether Thompson could reasonably expect similar privacy in the treatment areas of the hospital is the precise question we are addressing. Furthermore, the consent for the officer to be present was given by hospital staff and a supervising physician, who had at least common, if not exclusive, authority over the premises. The consent of someone with authority over the premises would support a valid search, even if it were an area deemed private. *See State v. McGovern*, 77 Wis. 2d 203, 211, 252 N.W.2d 365, 369 (1976).

We recognize that historical notions of privacy generally accord patients a significant measure of privacy in their medical treatment. Sections 146.82 and 905.04, STATS., are certainly embodiments of these historical notions of privacy. Hospital treatment areas are not public thoroughfares to which all manner of persons have unfettered access. We conclude, however, that historical notions of privacy are not offended when a police officer, in responding to an emergency call and with the acquiescence of hospital staff, enters the treatment area of an emergency room. Nor are historical notions of privacy offended when an officer observes a surgical procedure with the permission of the operating surgeon, given a patient's traditional surrender to his or her physician of the right to determine who may and may not be present during medical procedures. If medical personnel violated confidentiality laws or ethical obligations by permitting the officer to be present, Thompson may be entitled to redress in another forum. We conclude, however, that the sixth and final factor does not weigh in favor of a conclusion that society would recognize as reasonable Thompson's asserted expectation of privacy in the emergency and operating rooms.

In sum, we conclude that only one of the six *Dixon* factors indisputably weighs in favor of determining that Thompson's claimed expectation of privacy is reasonable, while most of the other five weigh against it. Because we conclude that society would not recognize Thompson's expectation of privacy as reasonable, we need not evaluate whether Thompson somehow manifested, or should be deemed to have manifested, a subjective expectation of privacy during his treatment. We thus conclude, in light of the totality of the circumstances surrounding Thompson's presence in the hospital, that he did not have a reasonable expectation of privacy in either the emergency room or the operating room. The officer's presence during Thompson's emergency treatment and surgery did not, therefore, constitute a search under the Fourth Amendment and we need not inquire into the reasonableness of the officer's actions.

Although this case may present a matter of first impression in Wisconsin, our conclusion here is consistent with cases from other jurisdictions. Courts that have considered the issue have generally held that one does not have a reasonable expectation of privacy in areas in plain view in a hospital emergency room. For example, in *People v. Torres*, 494 N.E.2d 752 (Ill. App. Ct. 1986), a semi-conscious defendant was brought to a hospital emergency room for treatment for a suspected drug overdose. A police officer entered the emergency room, noticed a bag of marijuana protruding from the defendant's pocket, and seized the marijuana. The court upheld the seizure, with reasoning applicable to the present facts:

> [W]e will assume for purposes of this appeal that the defendant subjectively expected protection from

police scrutiny while in the hospital emergency room.

Nevertheless, we do not believe that an expectation of privacy in a hospital emergency room is objectively reasonable. The defendant correctly argues that an emergency room is not open to the general public in the sense that anyone may wander through at will. However, access to any emergency room by persons other than those seeking treatment is controlled by medical personnel for the purpose of enhancing their ability to treat patients. . . .

We conclude that the defendant had no reasonable expectation of privacy in the hospital emergency room. . . . This holding is not, as the defendant would suggest, an open invitation for the police to rifle the belongings of emergency room patients. Had this contraband been in a closed container, screened from public scrutiny, the defendant might successfully argue that an unreasonable search and seizure had occurred.

*Id.* at 755; *see also Holt v. United States*, 675 A.2d 474 (D.C. 1996); *Wagner v. Hedrick*, 383 S.E.2d 286 (W. Va. 1989); *Craft v. Commonwealth*, 269 S.E.2d 797 (Va. 1980).[8]

---

[8] Thompson's arguments on appeal challenge only the officer's presence in the treatment areas of the hospital. He does not claim that the officer improperly rifled his belongings or searched closed containers within the emergency room. The record does not indicate whether the pager and $100 bill were plainly visible or were concealed within Thompson's clothing when these items were seized by the officer in the emergency room. We do not address, therefore, whether Thompson had a reasonable expectation of privacy in items which may have been concealed in the clothing removed from him in the emergency room by medical personnel.

We have been able to locate only one case involving a potential search in an operating room, and it, too, is consistent with our conclusion here. In *Commonwealth v. Storella*, 375 N.E.2d 348 (Mass. App. Ct. 1978), a police officer was present in an operating room during surgery to remove a bullet from a criminal suspect. The officer was present with the permission of hospital personnel, but without the knowledge or consent of the suspect. The surgeon removed the bullet and turned it over to the officer, and the suspect was subsequently convicted of armed robbery. The court upheld the admission of the bullet as the proceeds of a private search that did not implicate the Fourth Amendment. Although the *Storella* court's rationale differs from ours, the court also suggested that "the defendant had no reasonable expectation of privacy in the context of the operating room." *Id*. at 352.

## CONCLUSION

We conclude that Thompson had no reasonable expectation of privacy in the hospital emergency room or operating room. Accordingly, the officer's collection of evidence in these areas did not constitute a search within the meaning of the Fourth Amendment. Because we conclude that the officer's gathering of evidence was not a search, we need not consider whether the officer's presence in the operating room could be justified under any of the limited circumstances that permit searches without a warrant.

Our conclusion that the evidence was properly admitted at trial thus disposes of Thompson's claim that his trial counsel's performance was deficient for failing to have the evidence suppressed. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984). Accordingly,

we affirm Thompson's convictions and the trial court's order denying him a new trial.

*By the Court.*—Judgment and order affirmed.