COURT OF APPEALS
DECISION
DATED AND FILED

May 9, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP926-CR**

Cir. Ct. No. **2016CF88**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

ROBERT GEORGE JOHNSON,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Sawyer County: JOHN M. YACKEL, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Robert Johnson appeals a judgment, entered upon a jury's verdict, convicting him of one count of first-degree sexual assault of a child

under age thirteen, contrary to WIS. STAT. § 948.02(1)(e) (2021-22).[1] Johnson also appeals the order denying his motion for postconviction relief.[2] Johnson argues that he was denied his constitutional right to a speedy trial, that his trial attorneys were constitutionally ineffective, and that his sentence is unduly harsh. We reject Johnson's arguments, and we affirm the judgment and order.

## BACKGROUND

¶2     According to a criminal complaint, on the evening of May 7, 2016, Johnson was an overnight guest in his cousin's home, and, after a night of drinking, he sexually assaulted then-six-year-old Alice[3] and told her not to tell anyone. Alice reported the assault to her parents. During a forensic interview, Alice stated that Johnson came into her bedroom and put his finger in her vagina. Alice further stated that Johnson "kissed" her vagina, forced her to touch his penis, and tried to get her to bite his penis. On May 11, 2016, the State charged Johnson with first-degree sexual assault of a child.

¶3     The State moved to admit other-acts evidence consisting of uncharged allegations that Johnson had sexually assaulted three girls, two of whom were related to Johnson, ranging in age from four to seven years old. After a hearing, the circuit court granted the motion. Johnson's counsel subsequently

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] The Honorable Kenneth Kutz presided at trial. The Honorable John M. Yackel imposed the sentence and decided the postconviction motion.

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym instead of the victim's name.

moved to withdraw from representation at Johnson's request, and a new attorney was appointed.

¶4    On the first day of trial, defense counsel informed the circuit court that Johnson wanted to enter a plea of not guilty by reason of mental disease or defect ("NGI"). When the court expressed concern over Johnson's late request, defense counsel explained that he had several conversations with Johnson about an NGI plea, and although a retained expert's opinion did not support such a plea, Johnson nevertheless insisted on entering an NGI plea. To alleviate the court's concerns about the impact of this late-stage request, defense counsel proposed that Johnson would waive his right to a jury trial at the second phase—the responsibility phase—of the bifurcated procedure.[4] The court took the proposal "under advisement," stating that it would revisit the issue if the jury found Johnson guilty of the sexual assault charge.

¶5    At trial, the jury watched Alice's forensic interview, in which she described the various ways that Johnson had assaulted her. A forensic scientist in the DNA analysis unit of the State Crime Laboratory testified that there were two

---

[4] When, as here, an NGI plea is joined with a not guilty plea, a bifurcated criminal trial results, consisting of two phases: the guilt phase and the responsibility phase. *See State v. Magett*, 2014 WI 67, ¶33, 355 Wis. 2d 617, 850 N.W.2d 42. If the jury finds the defendant guilty in the first phase, the circuit court withholds entry of judgment and the matter proceeds to the second phase. *See* WIS. STAT. § 971.165(1)(d). Our supreme court has further explained:

> In the second phase, the jury considers whether the defendant had a mental disease or defect at the time of the crime and whether, "as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law."

*Magett*, 355 Wis. 2d 617, ¶33 (quoting WIS. STAT. § 971.15(1)).

sources of DNA found in Alice's underwear, and the mixture was 10,000 times more likely to be a mixture of Johnson's saliva DNA and Alice's DNA than a mixture of Alice's DNA with that of another male. The jury also heard testimony from two of Johnson's nieces, both of whom testified that Johnson sexually assaulted them in their respective homes—one when she was six or seven years old, and the other when she was five years old. During closing arguments, the State highlighted the other-acts evidence to demonstrate that Johnson had a plan to assault Alice and that the assault was not accidental but, rather, intentional. The jury found Johnson guilty of the crime charged.

¶6     The circuit court then returned to Johnson's request to enter an NGI plea. The court recounted that it had reservations about the timing of the request, noting the fact that a prior evaluation did not appear to support such a plea. The court nevertheless ordered an additional expert evaluation of Johnson, noting that it did not want to unnecessarily prolong this matter and it wanted to bring closure to the victim if, in fact, the evaluation did not ultimately support an NGI plea.

¶7     After evaluating Johnson, a licensed psychologist opined, to a reasonable degree of professional certainty, that she could not support an NGI plea on Johnson's behalf. The psychologist concluded: "There is no evidence that, other than because of his alcohol consumption, Mr. Johnson was unable to appreciate the wrongfulness of his conduct and that he was unable to conform his conduct to the requirements of the law at the time of the commission of the alleged offense." The matter therefore proceeded to sentencing, and the circuit court imposed the maximum sentence, consisting of forty years of initial confinement followed by twenty years of extended supervision.

¶8 Johnson filed a postconviction motion raising three claims. First, he argued that he was denied his constitutional right to a speedy trial. Second, he claimed that his trial attorneys were ineffective by failing to properly assert an NGI plea on his behalf and by failing to retain an NGI evaluator of Johnson's choice. Finally, Johnson claimed that his sentence was unduly harsh. Johnson's postconviction motion was denied after a ***Machner***[5] hearing, and this appeal follows.

## DISCUSSION

### A. Constitutional Right to a Speedy Trial

¶9 Wisconsin courts employ a four-part balancing test to determine whether a person's constitutional right to a speedy trial was violated, considering: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay resulted in prejudice to the defendant. ***State v. Borhegyi***, 222 Wis. 2d 506, 509, 588 N.W.2d 89 (Ct. App. 1998). The length of the delay is a threshold consideration, and the inquiry goes no further unless the reviewing court concludes that it is presumptively prejudicial. *See **Doggett v. United States***, 505 U.S. 647, 652 (1992); ***State v. Leighton***, 2000 WI App 156, ¶7, 237 Wis. 2d 709, 616 N.W.2d 126. Generally, a post-accusation delay approaching one year is considered to be presumptively prejudicial. ***Borhegyi***, 222 Wis. 2d at 510.

¶10 Speedy trial claims are assessed based on the totality of the circumstances. ***State v. Urdahl***, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704

---

[5] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

N.W.2d 324. Generally, none of the four factors are "either a necessary or sufficient condition" to finding a speedy trial violation. *Barker v. Wingo*, 407 U.S. 514, 533 (1972). Rather, the four factors must be contemplated "together with such other circumstances as may be relevant." *Id.* The remedy for a defendant whose constitutional right to a speedy trial is violated is dismissal of the charges. *Urdahl*, 286 Wis. 2d 476, ¶11.

¶11 Johnson asserts that his pretrial incarceration of nearly three years violated his constitutional right to a speedy trial, requiring that his conviction be vacated. Although Johnson acknowledges the four-part balancing test, he provides no meaningful discussion of the test as applied to his case. This court need not address an issue so lacking in organization and substance that for the court to decide the issue, it would first have to develop it. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Even applying the test, however, Johnson's claim fails.

¶12 If, as here, the delay is presumptively prejudicial, the length of the delay is one factor in the four-part balancing test. *Doggett,* 505 U.S. at 652. As one of the four factors, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.* Although the State acknowledges that this factor likely weighs in Johnson's favor, it argues that other factors diminish the significance of the delay. We agree.

¶13 Regarding reasons for the delay, courts weigh delay heavily against the State where the State makes "[a] deliberate attempt … to delay the trial in order to hamper the defense." *Urdahl*, 286 Wis. 2d 476, ¶26. Delays caused by the State's negligence or overcrowded courts also count against the State, though courts weigh those delays less heavily. *Id.* Many types of delays do not count at

all, including delays caused by witness unavailability, *see id.*, the litigation of pretrial motions, *see Scarbrough v. State*, 76 Wis. 2d 87, 101, 250 N.W.2d 354 (1977), and the ordinary demands of the judicial system, *see Norwood v. State*, 74 Wis. 2d 343, 354, 246 N.W.2d 801 (1976). Additionally, "if the delay is caused by the defendant, it is not counted." *Urdahl*, 286 Wis. 2d 476, ¶26.

¶14 Here, roughly the first year of delay was reasonably attributed to the ordinary demands of the judicial system and the litigation of a pretrial motion. Johnson demanded a speedy trial on April 25, 2017, but he subsequently withdrew that request to pursue retesting of DNA. At least eight months passed before the DNA was retested, and Johnson makes no claim that this delay was attributable to the State. Johnson discharged his first trial attorney in July 2018, and the remainder of the time until the April 2019 trial involved pretrial hearings and the litigation of a pretrial motion. Because significant periods of delay were attributable to Johnson, this factor favors the State. Similarly, the third factor—whether Johnson asserted his speedy trial right—also favors the State, as Johnson made, but withdrew, a speedy trial request.

¶15 With respect to the fourth factor—prejudice to the defendant—courts assess prejudice in light of the interests that the speedy trial right protects: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *See id.*, ¶34. Of these interests, impairment of the defense is the most important, and it exists where witnesses die or disappear during the delay, where defense witnesses cannot recall events pertinent to the case, or where the defendant is encumbered in his or her ability to gather evidence. *See id.*; *see also Scarbrough*, 76 Wis. 2d at 98. Although a defendant need not show actual prejudice to prevail on a speedy trial claim, *see Leighton*, 237 Wis. 2d 709, ¶25,

the absence or scarcity of prejudice strongly weighs against finding a speedy trial violation, *see, e.g.*, *Barker*, 407 U.S. at 534. Here, Johnson does not address how he was prejudiced by the delay, and no such prejudice is evident from the record. Because three of the four factors for assessing a speedy trial claim favor the State, we conclude that the circuit court properly rejected this claim.

## B. Ineffective Assistance of Johnson's Trial Counsel

¶16 Next, Johnson argues that the ineffectiveness of his trial attorneys warrants a new trial. This court's review of an ineffective assistance of counsel claim is a mixed question of fact and law. *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The circuit court's findings of fact will not be disturbed unless they are clearly erroneous. *Id.* However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law that this court reviews independently. *Id.*

¶17 To substantiate a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's errors were prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one. *See id.* at 697.

¶18 Johnson argues that his attorneys were ineffective by failing to timely enter an NGI plea on his behalf.[6] At the *Machner* hearing, Johnson

---

[6] For the first time on appeal, Johnson argues that his trial counsel was ineffective "for failing to object to [Alice's] forensic interview." We need not consider an ineffective assistance of counsel claim that was not raised in the circuit court or addressed at a *Machner* hearing. *See State v. Thompson*, 222 Wis. 2d 179, 190 n.7, 585 N.W.2d 905 (Ct. App. 1998).

testified that he made repeated requests for both of his attorneys to enter an NGI plea. His first attorney, Daniel Chapman, testified that he discussed the possibility of an NGI plea with Johnson, but based on their discussion, Chapman concluded that "nothing … rose to the level of [Johnson] not understanding that the conduct alleged was right or wrong, or that he was incapable of conforming himself to the law." Chapman, therefore, did not request an NGI evaluation or enter an NGI plea on Johnson's behalf. An attorney is allowed to "make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Chapman considered Johnson's reasons for believing he was an NGI candidate and, after evaluating the legal standard, determined that Johnson could not meet it. That determination is presumed reasonable, *see **id.*** at 689, and Johnson offers nothing but speculation to overcome that presumption.

¶19 Johnson's subsequent counsel, Ryan Reid, testified that he also discussed an NGI plea with Johnson. Although Reid did not believe that Johnson was an NGI candidate, he retained an expert to evaluate Johnson. That expert's opinion did not support an NGI plea. When asked whether Johnson wanted to pursue the plea despite the evaluator's opinion, Reid responded: "That was unclear, at least to me.… I did tell him we would need evidence to support the plea. My recollection is he never said, Mr. Reid, I want to enter the plea." According to Reid, Johnson did not tell him to enter the plea until the morning of trial.

¶20 In concluding that neither attorney was deficient with respect to their handling of Johnson's alleged desire to enter an NGI plea, the circuit court found that Johnson had exhibited a "pattern of indecision." The court recounted that "Mr. Chapman never indicated that [Johnson] said, file an NGI plea and Mr. Chapman said, no." Further, the court found that Reid "never got the directive

9

[to enter an NGI plea] until the morning of trial." On appeal, Johnson ignores the court's findings—in particular, that the court did not believe Johnson's claim that he clearly demanded to enter an NGI plea before the first day of trial. Despite Johnson's claims to the contrary, the circuit court, as fact finder, is the ultimate arbiter of witness credibility, and we must uphold its factual findings unless they are clearly erroneous. *See* ***State v. Peppertree Resort Villas, Inc.***, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345. The court's findings are supported by the record.

¶21 To the extent Johnson alleges that his attorneys were ineffective by failing to "thoroughly" discuss his right to enter an NGI plea, the evidence does not support his claim. In his brief, Johnson recounts that both of his attorneys testified that they had multiple conversations with him regarding such a plea. It may be that Johnson is alleging a failure to properly evaluate whether an NGI plea could be pursued. Reid, however, obtained an NGI evaluation, and, as outlined above, a second evaluation was ordered after the jury trial. Neither evaluation supported an NGI plea.

¶22 Next, Johnson asserts that his trial attorneys were ineffective by failing to pursue a speedy trial. As recounted above, Chapman sought, but then withdrew, a speedy trial demand because Johnson wanted to pursue retesting of DNA evidence. Chapman testified that after receiving the test results, Johnson was indecisive about whether he wanted to accept a plea offer or move forward with a trial. Chapman added that he eventually told Johnson, "look, if we are not going to be accepting an offer[,] we need to set this for trial," and Johnson then asked him to withdraw. In turn, Reid testified that in his conversations with Johnson, there was no discussion of demanding a speedy trial.

¶23    The circuit court rejected Johnson's claim that his attorneys were ineffective with respect to his speedy trial right, finding that there was no evidence Johnson asked his attorneys to file a speedy trial demand and the attorneys refused.  The record supports this finding.

¶24    Johnson also claims that his trial counsel failed to "effectively cross-examine" Alice.  At the *Machner* hearing, Reid explained that after "reviewing the discovery, preparing for trial, speaking with Mr. Johnson," and being at the trial, "there weren't any inconsistencies" in Alice's testimony.  Counsel therefore determined there was "no good faith reason" to ask a question just "to attack the witness."  The circuit court determined that Reid made a reasonable strategic decision not to attack Alice on cross-examination.

¶25    "[W]here a lower court determines that counsel had a reasonable trial strategy, the strategy is virtually unassailable in an ineffective assistance of counsel analysis."  *State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93 (internal quotations omitted).  Moreover, the fact that a strategy fails does not make the attorney's representation deficient.  *See State v. Koller*, 87 Wis. 2d 253, 264, 274 N.W.2d 651 (1979).  For the reasons discussed above, we are not persuaded that Johnson demonstrated deficient performance on the part of either of his attorneys.

## C. Resentencing

¶26    Johnson argues that he is entitled to resentencing because his sentence to the maximum term of initial confinement was unduly harsh.  In determining whether a sentence is excessive or unduly harsh, the circuit court's decision will be upheld unless it is based on an erroneous exercise of discretion. *State v. Scaccio*, 2000 WI App 265, ¶17, 240 Wis. 2d 95, 622 N.W.2d 449.  The

sentence imposed should be the minimum amount of confinement that is consistent with three primary sentencing factors: (1) the gravity of the offense; (2) the character of the defendant; and (3) the need to protect the public. *See State v. Gallion*, 2004 WI 42, ¶¶23, 59-61, 270 Wis. 2d 535, 678 N.W.2d 197.

¶27 The weight to be given each of the primary factors is within the discretion of the sentencing court, and the sentence may be based on any or all of the three primary factors after all relevant factors have been considered. *See State v. Wickstrom*, 118 Wis. 2d 339, 355, 348 N.W.2d 183 (Ct. App. 1984). "As long as the [circuit] court considered the proper factors and the sentence was within the statutory limitations, the sentence will not be reversed unless it is so excessive as to shock the public conscience." *State v. Owen*, 202 Wis. 2d 620, 645, 551 N.W.2d 50 (Ct. App. 1996). Here, the circuit court considered the proper sentencing factors when imposing the maximum sentence.

¶28 With respect to the gravity of the offense, the circuit court noted that this Class B felony "is almost … the most severe offense that you can commit in the State of Wisconsin," adding that Johnson had committed a "heinous" crime against "an innocent, defenseless child sleeping in … her own bed." Turning to Johnson's character, the court highlighted the "strong" evidence that Johnson had assaulted numerous children. Although the court expressed sympathy for Johnson's claim that he had been a victim of sexual assault, the court noted that being a victim did not justify becoming a predator. Finally, the court stressed the importance of protecting the public in light of Johnson's apparent "habit" of sexually assaulting children and his refusal to accept responsibility for his actions. The court expressed its belief that if Johnson was not imprisoned, he would engage in the same type of activity. The maximum sentence was therefore "designed to make sure" Johnson never committed another child sexual assault.

¶29    Johnson nevertheless asserts that his sentence is harsh when compared to lesser sentences imposed for the same offense in cases involving what he deems to be more aggravating circumstances.  Sentencing in Wisconsin, however, is individualized, *see Gallion*, 270 Wis. 2d 535, ¶48, and "[u]ndue leniency in one case does not transform a reasonable punishment in another case to a cruel one," *Ocanas v. State*, 70 Wis. 2d 179, 189, 233 N.W.2d 457 (1975) (citation omitted).  Because the sentencing court properly exercised its discretion when it considered relevant factors and imposed a sentence authorized by law, the court properly denied Johnson's motion for resentencing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.