STATE of Wisconsin, Plaintiff-Appellant,

v.

Michelle R. POPENHAGEN, Defendant-Respondent.†

Court of Appeals

*No. 2006AP1114–CR. Submitted on briefs November 27, 2006.
—Decided December 12, 2006.*

2007 WI App 16

(Also reported in 728 N.W.2d 45.)

† Petition to review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Steven M. Michlig*, Rhinelander.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James B. Connell* of *Crooks, Low & Connell, S.C.*, Wausau.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.   The State appeals an order suppressing Michelle Popenhagen's bank records and certain incriminating statements she made after the records were seized. The bank records were obtained without probable cause and in violation of state and federal statutes. However, because the State did not violate Popenhagen's state or federal constitutional rights, suppression is not available as a remedy. We therefore reverse the order.

## BACKGROUND

¶ 2.   This case involves several alleged thefts by Popenhagen from her employer, Save More Foods. According to the criminal complaint, Popenhagen cashed dishonored checks at Save More and stole money from an ATM in the store. The total amount believed stolen was approximately $29,000.

391

¶ 3.  Save More's owner contacted the Minocqua Police Department about Popenhagen on August 16, 2004. He told police Popenhagen was stealing money when she deposited funds into the ATM, and stated Popenhagen had cashed several checks for herself and her mother that had been returned due to a closed account or insufficient funds.

¶ 4.  Minocqua police officers then requested subpoenas for Popenhagen's bank records through the Oneida County District Attorney's office. The subpoenas were signed by circuit court judges, although it is not clear what procedure was used in order to obtain the judges' signatures.[1] No determination of probable cause was made in connection with the judges' approval of the subpoenas, which was a violation of the applicable statutory procedure for obtaining a subpoena. *See* Wis. Stat. § 968.135.[2] The subpoenas were served on two banks, and the banks turned over all of Popenhagen's records, including bank statements and copies of deposit slips and cancelled checks.

¶ 5.  On September 19, two officers interviewed Popenhagen about the alleged thefts. According to the police report of the interview, Popenhagen admitted writing checks on accounts containing insufficient funds to cover the checks, but stated she had intended to deposit cash to cover the checks. She denied all allegations that involved theft from Save More.

¶ 6.  The officers then produced Popenhagen's bank records and confronted her with instances where

---

[1] Judge Mangerson, whose signature appears on one of the subpoenas, stated he could not explain how his signature or that of his colleague came about. The subpoenas are not in the record.

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

she made deposits that corresponded to thefts from the Save More store and the ATM. At that point, Popenhagen made several incriminating statements.

¶ 7. Popenhagen was charged with theft, contrary to WIS. STAT. §§ 943.20(1)(b) and (3)(c). Popenhagen moved to suppress the bank records and statements she made after the police confronted her with the records. The court held Popenhagen had a legitimate privacy interest in the records, and the search pursuant to the subpoenas therefore violated her state and federal constitutional rights and WIS. STAT. § 968.135. The court further held the remedy for a violation of § 968.135 was suppression of the records obtained in violation of that section and the fruits of those records.

## STANDARD OF REVIEW

¶ 8. This case requires us to apply the state and federal constitutions to undisputed facts. The application of constitutional principles to historical facts is a question of law reviewed without deference. *State v. Eason*, 2001 WI 98, ¶ 9, 245 Wis. 2d 206, 629 N.W.2d 625. This case also involves a question of statutory interpretation. The meaning of a statute is a question of law we review without deference to the circuit court but benefiting from its analysis. *Spiegelberg v. State*, 2006 WI 75, ¶ 8, 291 Wis. 2d 601, 717 N.W.2d 641.

## DISCUSSION

¶ 9. Popenhagen argues the subpoenas of her bank records violated the Fourth Amendment, the Wisconsin Constitution, and the Wisconsin Statutes, and that the remedy for those violations is suppression.

She also argues the court had inherent authority to exclude the records and their fruits in order to protect the integrity of the judicial process. We conclude neither the Fourth Amendment nor the Wisconsin Constitution recognizes an expectation of privacy in bank records, and therefore the subpoenas did not violate either. We also conclude that while the subpoenas did violate the Wisconsin Statutes, suppression is not available as a remedy for those violations. Finally, the court did not invoke inherent authority in support of its decision; therefore, inherent authority is not grounds for affirming the order.[3]

## I. The Fourth Amendment

■

¶ 10.   The Fourth Amendment protects against unreasonable searches and seizures. A "search" for Fourth Amendment purposes exists when an individual "manifested a subjective expectation of privacy in the searched object, and society is willing to recognize that expectation as reasonable." *Kyllo v. United States,* 533 U.S. 27, 27–28 (2001); *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

■

¶ 11.   The Supreme Court applied this principle to bank records in *United States v. Miller,* 425 U.S. 435 (1976). It held there was no legitimate expectation of privacy in bank records, for two reasons. *Id.* at 442.

---

[3] The State also argues Popenhagen does not have standing to pursue her Fourth Amendment claim and that she had no subjective privacy interest in her bank records. Because we conclude Popenhagen had no objectively legitimate Fourth Amendment privacy interest in her bank records, we need not address those arguments.

First, banks are not "neutrals in transactions involving negotiable instruments, but parties to the instruments with a substantial stake in their continued availability and acceptance." *Id.* at 440 (internal citations omitted). As a result, banks' records are not their account holders' "private papers;" instead, they are "business records of the banks." *Id.*

¶ 12. Second, the Court noted the records are

> not confidential communications but negotiable instruments to be used in commercial transactions. All of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business.

*Id.* at 442. The Court noted the general rule that when information is divulged to a third party, no Fourth Amendment concerns arise when the third party passes the information on to the government, even when the third party received the information only for a limited purpose. *Id.* The Court saw no reason to apply a different rule where bank records were involved.

¶ 13. Popenhagen argues *Miller* is no longer good law, for three reasons: (1) subsequent legislation shows society is now prepared to recognize a privacy interest in bank records; (2) changes in society have rendered *Miller*'s rationale no longer valid; and (3) *Miller* was met with "nearly universal disapproval" in scholarly criticism.

¶ 14. In support of her argument about subsequent legislation, Popenhagen focuses on the 1978 Right to Financial Privacy Act (RFPA).[4] The RFPA was enacted at least partly in response to *Miller*. *See United*

---

[4] Popenhagen also mentions the 1999 Gramm Leach Bliley Act. However, she focuses on the RFPA, and does not argue the

*States v. Frazin*, 780 F.2d 1461, 1465 (9th Cir. 1986) (reviewing legislative history). The RFPA prohibited banks from disclosing a customer's financial information without the customer's consent, a valid warrant, or a valid subpoena.[5] *Id.*; 12 U.S.C. § 3402. The RFPA provided civil remedies against the government and banks for disclosures made in violation of its terms, and made those remedies exclusive. 12 U.S.C. § 3417(d); *Frazin*, 780 F.2d at 1466. The RFPA remedies do not include suppression. *Frazin*, 780 F.2d at 1466. According to the court in *Frazin*, Congress chose this combination of rights and remedies by balancing customers' right to privacy against the needs of law enforcement. *Id.*

¶ 15.   While the RFPA shows some congressional concern with bank customers' privacy, Congress specifically did not recognize a privacy interest that rose to the level of the Fourth Amendment. If it had, it could easily have crafted a remedy on par with remedies available for Fourth Amendment violations. The fact that Congress chose not to shows it believed bank customers were deserving of some protection, but not the level of protection available under the Fourth Amendment. The RFPA therefore does not show that society is now prepared to recognize a Fourth Amendment privacy interest in bank records.

¶ 16.   Finally, Popenhagen argues changes in society subsequent to *Miller* render *Miller* obsolete. She argues today "the use of banks and other financial

---

1999 Act should be analyzed differently than the RFPA. We therefore focus on the RFPA as well.

[5] The parties agree the subpoenas here violated the RFPA, but Popenhagen relies on the RFPA only so far as it is relevant to the Fourth Amendment analysis, not as an independent source of a remedy.

institutions for the storage of personal information is the norm not the exception." However, this argument does not call into question either premise of the *Miller* decision. That is, it does not change the fact that bank records can be considered "business records of the bank" rather than individual property, or that bank records consist of information divulged to third parties. *See Miller*, 425 U.S. at 440–42. Rather, Popenhagen's argument mirrors the *Miller* dissent, where Justice Brennan argued:

> For all practical purposes, the disclosure by individuals or business firms of their financial affairs to a bank is not entirely volitional, since it is impossible to participate in the economic life of contemporary society without maintaining a bank account. In the course of such dealings, a depositor reveals many aspects of his personal affairs, opinions, habits and associations. Indeed, the totality of bank records provides a virtual current biography.

*Miller*, 425 U.S. at 451 (Brennan, J., dissenting).

¶ 17. Popenhagen's argument is virtually the same as Justice Brennan's. Justice Brennan's statement that it would be "impossible to participate in the economic life of contemporary society" without a bank account makes clear that in 1976 the storage of personal information in bank records was already the rule, not the exception. We are not convinced that the necessity of maintaining a bank account or the kind of information available from bank records has changed significantly from 1976, and therefore reject Popenhagen's argument.

¶ 18. Finally, Popenhagen points to what she characterizes as "nearly universal" scholarly criticism of *Miller*. This is essentially an argument that *Miller* was

wrongly decided, not an argument that *Miller* has been eroded or overruled.[6] The vote of legal scholars—unanimous or otherwise—is hardly enough to overrule Supreme Court precedent. Popenhagen fails to point to any Supreme Court or other cases questioning the continued validity of *Miller*. Absent such cases, *Miller* remains controlling law.

## II. The Wisconsin Constitution

¶ 19.   Popenhagen next argues even if the Fourth Amendment does not recognize a right to privacy in bank records, the Wisconsin Constitution does. Because this issue is controlled by *State v. Swift*, 173 Wis. 2d 870, 883, 496 N.W.2d 713 (Ct. App. 1993), we reject Popenhagen's argument.

¶ 20.   The Wisconsin Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

WIS. CONST. Art. I, § 11. The text of this provision is virtually identical to that of the Fourth Amendment.[7]

---

[6] This is especially true in view of the fact that most of the articles were contemporaneous responses to *United States v. Miller*, 425 U.S. 435 (1976). The most recent article Popenhagen cites was published in 1987, and most of the others were published within five years of the *Miller* decision.

[7] The differences are certain "inconsequential" variances in punctuation, capitalization, and use of the plural. *State v. Guzman*, 166 Wis. 2d 577, 586–87, 480 N.W.2d 446 (1992); *see also* U.S. CONST. AMEND. IV.

¶ 21.   In 1993, we held bank records were entitled to the same level of protection under WIS. CONST. Art. I, § 11, as they were under the Fourth Amendment. *Swift*, 173 Wis. 2d at 883. We based our holding on our supreme court's statements that it "consistently and routinely conformed the law of search and seizure under the Wisconsin Constitution to the law developed by the United States Supreme Court under the Fourth Amendment." *State v. Guzman*, 166 Wis. 2d 577, 586–87, 480 N.W.2d 446 (1992). This was due to the consistent text of the two provisions and the practical difficulties police would encounter if they were required to apply a standard that varied from the Fourth Amendment. *Id.*

¶ 22.   Popenhagen argues *Swift* has been called into question by *Eason. Eason* involved the "good faith" exception to the exclusionary rule. *Eason*, 245 Wis. 2d 206, ¶ 28. The court adopted a narrower "good faith" exception than exists under the Fourth Amendment, and stated that WIS. CONST. Art. I, § 11, guarantees more protection than the Fourth Amendment with regard to that particular point of law. *Id.*, ¶ 60. However, the court stated its decision was consistent with prior case law, under which the court, despite stated reluctance to give different meanings to the two provisions, recognized it was "conceivable" that the United States Supreme Court might interpret the Fourth Amendment in a way that was inconsistent with Art. I, § 11. *Id.*; *State v. Fry*, 131 Wis. 2d 153, 174, 388 N.W.2d 565 (1986).

¶ 23.   It may well be true, as Popenhagen argues, that *Eason* shows a new willingness by our supreme court to interpret our state constitution independently of its federal counterpart. *See State v. Knapp*, 2005 WI 127, ¶ 86, 285 Wis. 2d 86, 700 N.W.2d 899 (Crooks, J.,

concurring) (explaining decisions like *Eason* as part of a trend toward a more independent role for state constitutions in protecting individual rights). However, *Eason* did not overrule *Swift* or even call that case into question. It merely applied the standard existing when *Swift* was decided to a different question, and reached a different result. *Swift* is therefore controlling law, and we are bound to follow it. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997). We therefore reject Popenhagen's argument that a right to privacy in bank records is recognized by the Wisconsin Constitution.

## III. The Wisconsin Statutes

¶ 24. In relevant part, Wis. Stat. § 968.135 provides: "Upon the request of the attorney general or a district attorney and upon a showing of probable cause under s. 968.12, a court shall issue a subpoena requiring the production of documents . . . . This section does not limit or affect any other subpoena authority provided by law." The State concedes § 968.135 applies to this case, and further concedes the subpoena of Popenhagen's bank records was issued in violation of that section. It argues suppression is not available as a remedy, however, because suppression is available only for violations of state or federal constitutional rights or where a statute specifically provides for suppression as a remedy. We agree.

¶ 25. The supreme court recently held: "The suppression of evidence is . . . a judge-made rule used to deter misconduct by law enforcement officials. Suppression is only required when evidence has been obtained in violation of a defendant's constitutional rights, or if a statute specifically provides for the suppression remedy." *State v. Raflik*, 2001 WI 129, ¶ 15, 248 Wis. 2d 593, 636 N.W.2d 690 (internal citations omitted).

400

¶ 26. In *Raflik*, the court reviewed a telephone warrant application that had not been recorded. *Id.*, ¶¶ 5–6. The State conceded this was a violation of Wis. Stat. § 968.12, which regulates issuance of search warrants. *Id.*, ¶ 14. Nonetheless, the court concluded suppression was not required because no violation of Raflik's constitutional rights had occurred. *Id.*, ¶¶ 15, 17, 42.

¶ 27. The same situation presents itself here. Wisconsin Stat. § 968.135 provides a procedure for issuance of a subpoena for documents. In many cases under § 968.135—cases where the subpoena calls for release of constitutionally protected documents—a violation of the probable cause requirements of that section will necessarily coincide with a constitutional violation and suppression. However, like violations of Wis. Stat. § 968.12, not all violations of § 968.135 are constitutionally significant. Because the violation here was not constitutionally significant, suppression was not available as a remedy.

### IV. Inherent authority

¶ 28. Finally, Popenhagen argues the court had inherent authority to exclude evidence obtained in violation of Wis. Stat. § 968.135. She argues by analogy to civil suits, where the court has both inherent and statutory power to sanction parties who fail to comply with procedural statutes and rules governing the suit. *See* Wis. Stat. § 804.12(2); *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273–74, 470 N.W.2d 859 (1991). Those sanctions include exclusion of evidence and dismissal of the suit. *Id.* A court's decision to grant

sanctions is a discretionary one and will be upheld if the circuit court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Id.* at 273–74.

¶ 29. Assuming the court had the authority Popenhagen claims, her argument fails because the court never invoked its inherent authority in this case. Instead, the court held:

> But it is clear to me that there is now a [state and federally recognized] right to privacy in one's personal banking records. And I'm convinced that obtaining those records over which there is an umbrella of privacy by violating 968.135 of the statutes, should result in suppression. [To hold otherwise] would emasculate the clear directives of 968.135 . . . .

Because the court never invoked its inherent authority, it necessarily did not discuss the legal standard involved, apply the facts to that standard, or conclude the evidence should be suppressed as a sanction. Inherent authority therefore is not grounds for affirming the order.

*By the Court*—Order reversed.

¶ 30. CANE, C.J. (*dissenting*). The majority concludes neither the Fourth Amendment nor the Wisconsin Constitution recognizes an expectation of privacy in bank records and therefore suppression of the State's unlawfully obtained bank records and tainted evidence is not an available remedy in a criminal proceeding. Because I would hold people have a constitutional right

under the Wisconsin Constitution against unlawful searches and seizures of their bank records, I respectfully dissent.

¶ 31. WISCONSIN CONST. Art. I, § 11, provides:

The right of the people to be secure in their persons, houses, *papers, and effects* against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. (Emphasis added).

Here, the State concedes that it obtained Michelle Popenhagen's bank records in violation of WIS. STAT. § 968.135. It admits it did not even attempt to comply with the probable cause requirement. Section 968.135 provides:

Upon the request of the attorney general or a district attorney *and upon a showing of probable cause* under s. 968.12, a court shall issue a subpoena requiring the production of documents, as specified in s. 968.13(2). The documents shall be returnable to the court which issued the subpoena. Motions to the court, including, but not limited to, motions to quash or limit the subpoena, shall be addressed to the court which issued the subpoena. Any person who unlawfully refuses to produce the documents may be compelled to do so as provided in ch. 785. This section does not limit or affect any other subpoena authority provided by law. (Emphasis added.)

¶ 32. The issue in this case centers on whether people have a reasonable expectation of privacy in their bank records. In my opinion they do. The right to be secure in one's papers has been applied to a person's private papers since 1886. *Boyd v. United States*, 116 U.S. 616, 621 (1886).

¶ 33. I recognize that in *United States v. Miller*, 425 U.S. 435, 442 (1976), the United States Supreme Court held there was no legitimate expectation of privacy under the Fourth Amendment in bank records. However, since *Miller*, which has been criticized in many academic circles, both Congress and the Wisconsin Legislature responded with legislation strengthening a customer's legitimate right to privacy in bank records. I will confine myself to Wisconsin's legislative response, as I apply only our Wisconsin Constitution and state laws.

¶ 34. It has been recognized and established for some time that it is the prerogative of Wisconsin to afford greater protection to a person's liberties within the boundaries of its constitution and laws. *State v. Doe*, 78 Wis. 2d 161, 171, 254 N.W.2d 210 (1977). The State does not dispute this.

¶ 35. Thus, we first have our Wisconsin Constitution protecting our citizens' right to their papers and effects from unreasonable seizure without a search warrant establishing probable cause. The legitimate expectation of privacy to a person's bank records was reinforced by our legislature in 1979 when it created Wis. Stat. § 968.135, which protects a customer's right to documents such as bank records from subpoenas unless the attorney general or district attorney shows the same probable cause as required in search warrants.

¶ 36. It is noteworthy this statute is included in Wis. Stat. ch. 968, our procedural statute for commencement of criminal proceedings, and follows Wis. Stat. § 968.12, which lists the requirements for a search warrant. Importantly, it is not under a general civil procedure for obtaining a citizen's private bank records. Nor is this a situation where a nongovernmental agency

acquired the bank records. WISCONSIN STAT. § 968.135, in my opinion, establishes our citizens' reasonable expectation of privacy in bank records in the context of criminal proceedings.

¶ 37. The State's argument that WIS. STAT. § 968.135 does not include a provision stating that suppression is a sanction for unlawfully subpoenaed bank records is unpersuasive. Interestingly, when one looks at the legislative requirements for a search warrant, the sanction of suppression, or any other sanction for that matter, is not specifically stated. That sanction arises from our constitutional right to be free from unreasonable searches and seizures.

¶ 38. Therefore, in my opinion, people have a legitimate expectation of privacy in their bank records and when the attorney general or district attorney fails to show probable cause for the subpoena, not only must the subpoena be quashed or limited, but the records and evidence obtained unlawfully must not be used in any criminal proceedings. It is no different from the attorney general or district attorney obtaining a search warrant without establishing probable cause. When the State unlawfully obtains a search warrant or, as in this case, unlawfully obtains subpoenaed bank records, the evidence must be suppressed so that it is not used in the criminal proceeding.

¶ 39. Finally, this case involves the flagrant violation of WIS. STAT. § 968.135. No attempt was made to comply with the statute, nor has any explanation been offered for the abuse of this process. Yet the State wants us to ignore the statute and allow evidence resulting from its unlawful seizure to be used in a criminal proceeding. I am not persuaded. The only appropriate

remedy in this criminal proceeding is the exclusion of the records and tainted evidence, as the trial court correctly concluded. Accordingly, I respectfully dissent.