STATE of Wisconsin, Plaintiff-Respondent,†

v.

Ellen T. STRAEHLER, Defendant-Appellant.

Court of Appeals

*No. 2007AP822–CR. Submitted on briefs September 18, 2007. —Decided December 19, 2007.*

2008 WI App 14

(Also reported in 745 N.W.2d 431.)

† Motion for reconsideration denied 1/10/08.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Daniel P. Fay* of *Oakton Avenue Law Offices, S.C.,* Pewaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad Schimel,* district attorney, and *Ted Szczupakiewicz,* assistant district attorney, Waukesha; *Barbara L. Oswald,* assistant attorney general, and *J.B. Van Hollen,* attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. ANDERSON, P.J. The issue is whether suppression of evidence is a proper remedy for an alleged violation of health care privacy laws. Ellen T. Straehler argues that the release of her confidential health information by nurse Laura Hagerman was in violation of both HIPAA[1] and Wis. Stat. § 146.82 (2005–06)[2] and that the proper remedy is suppression of this information. We affirm the circuit court's denial of Straehler's suppression motion because, even assuming[3] a health care privacy violation, the remedy of suppression is not appropriate. ·

---

[1] "HIPAA" is the acronym for the Health Insurance Portability and Accounting Act of 1996. *See* Pub. L. No. 104–191, 110 Stat. 1936; 42 U.S.C. § 1320d-6 (2006).

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[3] We assume, *for analysis only,* that nurse Hagerman violated HIPAA and/or Wis. Stat. § 146.82; we do not decide whether Hagerman actually violated any law; that issue is not before this court.

¶ 2. The facts are not in dispute.[4] On May 15, 2006, at approximately 6:00 a.m., Straehler ran a red light and her car was struck by a semi-trailer truck turning left into the intersection. As a result of this accident, Straehler suffered serious injury to her left eye and cheek. City of Pewaukee Police Officer Charlene Craft responded to the scene, where she found Straehler injured in the driver's seat of her car; Craft did not detect an odor of intoxicants coming from Straehler at the scene. Straehler had to be extracted from the vehicle and was transported by helicopter to Froedtert Hospital for treatment.

¶ 3. Detective Jake Bernotas also responded to the scene. From there, he proceeded to the hospital to obtain a written statement from Straehler and to return her purse. At the hospital, Bernotas attempted to interview Straehler but she was incoherent. Bernotas then made contact with Hagerman who was treating Straehler and asked if Straehler's incoherent condition was the result of her injury. Hagerman responded that Straehler suffered a massive injury to her left eye

---

[4] We appreciate the attorney general's thorough recitation of the facts and draw freely from it. Both the district attorney and the attorney general submitted response briefs and we refer to their position collectively as the State's. Straehler's recitation of facts is incomplete, lacks citation to the record and cites to documents outside of the record. Such failure is a clear violation of WIS. STAT. RULE 809.19(1)(d) of the rules of appellate procedure, which requires the appellant to set out facts "relevant to the issues presented for review, with appropriate references to the record." An appellate court is improperly burdened where briefs fail to consistently and accurately cite to the record. *Meyer v. Fronimades*, 2 Wis. 2d 89, 93–94, 86 N.W.2d 25 (1957). This court is not required to sift through the record for facts. *Keplin v. Hardware Mut. Cas. Co.*, 24 Wis. 2d 319, 324, 129 N.W.2d 321 (1964).

resulting in blindness and possibly a concussion. Hagerman related that she and other hospital staff smelled alcohol coming from Straehler and that Straehler had told hospital staff that she had consumed alcohol prior to the accident.

¶ 4. With Straehler's consent, samples of her blood were drawn at the hospital.[5] The samples were sent to the State Laboratory of Hygiene for analysis.[6] The lab reports indicated that Straehler had a blood alcohol content level of .119 grams per 100 milliliters of blood. Based upon Straehler's prior conviction on January 19, 2006, for operating under the influence, Bernotas issued Straehler citations for operating a motor vehicle while intoxicated, second offense, and operating a motor vehicle with a prohibited blood alcohol concentration. A criminal complaint was filed on June 8, 2006, charging second offenses for both violations.

¶ 5. HIPAA's privacy rule states in relevant part that a "covered entity" may not use or disclose protected health information, except as permitted or required by the regulations. See 45 C.F.R. § 164.502(a). "Covered entities" under HIPAA are: Health plans, health care clearinghouses and health care providers who transmit any health information electronically. See 45 C.F.R. §§ 160.102(a), 164.104(a).

¶ 6. WISCONSIN STAT. § 146.82 provides in relevant part:

---

[5] Consent for Straehler's blood draw was never at issue; her brief acknowledges that she gave consent.

[6] The record does not indicate who requested the blood draw. However, the attorney general indicates that, because the sample was sent to the State Laboratory of Hygiene, it was likely drawn at the request of Bernotas, not at the request of hospital staff for treatment purposes.

**146.82 Confidentiality of patient health care records. (1)** CONFIDENTIALITY. All patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient. This subsection does not prohibit reports made in compliance with s. 146.995, 253.12(2) or 979.01; testimony authorized under s. 905.04(4)(h); or releases made for purposes of health care operations, as defined in 45 CFR § 164.501, and as authorized under 45 CFR 164, subpart E.

¶ 7. Statutory interpretation begins with the statute's text; we give the text its common, ordinary, and accepted meaning, except that we give technical or specially defined words their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. In construing a statute we are to give deference to the policy choices made by the legislature in enacting the law which requires that we focus primarily on the language of the statute. *Id.*, ¶ 44. We also consider the scope, context and structure of the statute itself. *Id.*, ¶¶ 46, 48. If this process of analysis yields a plain meaning, then there is no ambiguity and we apply that plain meaning. *Id.*, ¶ 46.

¶ 8. Straehler argues that the release of her confidential health information by Hagerman was illegal and therefore should be suppressed. She additionally argues that without Hagerman's release of medical information, Bernotas did not have probable cause for a

blood draw. The State concedes Straehler's probable cause argument.[7] We therefore need only address Straehler's argument for suppression.

¶ 9. In support of suppression, Straehler cites to both federal and state medical privacy law: HIPAA and Wis. Stat. § 146.82(1).[8] *See* 45 C.F.R. § 164.502(a); Wis. Stat. § 146.82(1). Straehler contends improper police conduct resulted in the gathering of her medical information: "Investigating authorities did not properly go about discovery procedure when they violated nurse-patient confidentiality." Straehler attempts, unsuccessfully, to place "investigating authorities" under the purview of HIPAA and Wisconsin's medical privacy statute. She then claims that, in relying on Hagerman's statements for probable cause to draw her blood, the police violated these statutes making the evidence collected in violation of these statutes suppressible.

¶ 10. Straehler's argument does not carry for a number of reasons. First, Straehler ignores the fact that HIPAA is limited in its scope and applicability. Investigating authorities, i.e., police officers, are not among the "covered entities" expressly subject to HIPAA. *See* 45 C.F.R. §§ 160.102(a), 164.104(a). In other words, HIPAA

---

[7] The State concedes that "if Nurse Hagerman's statements were to be suppressed, probable cause to arrest could not be established and ultimately the results of any chemical test would not be admissible."

[8] From her argument and the record, Straehler appears to have conceded that her constitutional rights were not violated. She does not cite to any constitutional provision in her appellate brief, and at the suppression hearing, she stated that the Fourth Amendment is not at issue: "It's not really a [F]ourth [A]mendment law. It's the issue of what is the remedy when information is obtained in violation of HIPAA."

applies to "covered entities," but police officers are not listed as one of the covered entities. Therefore HIPAA does not control the conduct of law enforcement officers. *See* 45 C.F.R. §§ 160.102(a), 164.104(a). Thus, even assuming Hagerman disclosed information in violation of this privacy rule, in urging suppression of the evidence, Straehler ignores the most obvious limitation of HIPAA: HIPAA and its accompanying regulations, including the privacy rule, apply to express "covered entities:" health plans, health care clearinghouses, and health care providers who transmit health information electronically. *See* 45 C.F.R. §§ 160.102(a), 164.104(a).

¶ 11. Notably, there is judicial agreement that the legislature did not intend HIPAA to apply to noncovered entities. *See United States v. Mathis*, 377 F. Supp. 2d 640, 645 (M.D. Tenn. 2005) (FBI does not fit within any category of "covered entities" in HIPAA); *see also State v. Downs*, 923 So. 2d 726, 731 (La. Ct. App. 2005) (district attorney is not a "covered entity" under HIPAA).

¶ 12. In fact, during the promulgation of HIPAA, the Department of Health and Human Services (DHHS) expressly stated: "We shape the rule's provisions with respect to law enforcement according to the limited scope of our regulatory authority under HIPAA, which *applies only to the covered entities* and *not to law enforcement officials.*" 65 Fed. Reg. 82462, 82679 (Dec. 28, 2000) (emphasis added). DHHS further clarified:

> This rule regulates the ability of health care clearinghouses, health plans, and covered health care providers to use and disclose health information. *It does not regulate the behavior of law enforcement officials* or the courts, nor does it prevent states from regulating law enforcement officials. All regulations have some effects on entities that are not directly regulated. We have

367

considered those effects in this instance and have determined that the provisions of the rule are necessary to protect the privacy of individuals.

*Id.* at 82680 (emphasis added).

¶ 13. Second, even if Bernotas was somehow bound by HIPAA, which we have established an officer is not, HIPAA does not provide for suppression of the evidence as a remedy for a HIPAA violation. Suppression is warranted only when evidence has been obtained in violation of a defendant's constitutional rights or if a statute specifically provides for suppression as a remedy. *See, e.g., State v. Popenhagen,* 2007 WI App 16, ¶ 25, 298 Wis. 2d 388, 728 N.W.2d 45, *review granted,* 2007 WI 61, 300 Wis. 2d 191, 732 N.W.2d 857 (2006AP1114–CR); *State v. Repenshek,* 2004 WI App 229, ¶ 23, 277 Wis. 2d 780, 691 N.W.2d 369; *State v. Raflik,* 2001 WI 129, ¶ 15, 248 Wis. 2d 593, 636 N.W.2d 690; *State ex rel. Peckham v. Krenke,* 229 Wis. 2d 778, 787, 601 N.W.2d 287 (Ct. App. 1999). Straehler does not argue a constitutional violation and the statute does not specifically provide for suppression as a remedy; thus, as DHHS explained during its promulgation: "[U]nder the HIPAA statutory authority, *we cannot impose sanctions on law enforcement officials or require suppression of evidence.* We must therefore rely on rules that regulate disclosure of protected health information by covered entities in the first instance." 65 Fed. Reg. at 82679.

¶ 14. Third, HIPAA expressly provides that it preempts state law when a "standard, requirement, or implementation specification . . . is *contrary* to a provision of State law." 45 C.F.R. § 160.203 (emphasis added). Straehler argues that this means HIPAA preempts Wis.

STAT. § 905.04 which provides: "There is no privilege concerning the results of or circumstances surrounding any chemical tests for intoxication or alcohol concentration." Sec. 905.04(4)(f). We disagree because, as the attorney general points out, HIPAA and Wisconsin's evidentiary exception rule are not "contrary." Thus, HIPAA does not preempt this state law or eliminate the exception to Wisconsin's evidentiary privilege. *See* § 905.04(4)(f). Moreover, WIS. STAT. § 146.84 provides remedies for violations of WIS. STAT. § 146.82. The remedies do not include suppression of evidence. *See State v. Thompson*, 222 Wis. 2d 179, 189, 585 N.W.2d 905 (Ct. App. 1998). Further, § 146.82(2)(b) restricts redisclosure of patient health care records and identifying information about a patient whose patient health care records are released, but that provision does not require suppression of evidence. Finally, Straehler's implication that the police and/or Hagerman somehow violated state medical confidentiality law is misplaced. Section 146.82 is limited by its plain language.

¶ 15. The plain language of WIS. STAT. § 146.82 states that it applies to patient health care *records:* "All patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient." Sec. 146.82(1). Patient health care records are defined as "all records related to the health of a patient prepared by or under the supervision of a health care provider." *See* WIS. STAT. § 146.81(4).

¶ 16. In *Thompson*, we examined WIS. STAT. § 146.82 and held that it does not reach beyond protection of health care records. *Thompson*, 222 Wis. 2d at 188. Thompson moved for suppression of evidence seized by police while he was being treated by hospital staff. *Id.* at 181.

369

¶ 17. On the basis of information provided by a police officer—that Thompson had likely ingested a substantial quantity of cocaine—the doctor treating Thompson determined that without surgery to remove the ingested drugs, Thompson risked death. *Id.* A police detective directed one of the officers to remain at the hospital and to take custody of the cocaine when it was removed from Thompson. *Id.* Hospital staff provided the officer with operating room clothing, and the officer entered the operating room and observed the surgery. *Id.* The doctor removed three bags of cocaine from Thompson's small intestine. *Id.* The remains of a fourth bag, which had apparently ruptured, were removed from Thompson's stomach via his mouth. *Id.* The bags were placed in a container and given to the officer. *Id.* at 182–83. Thompson was later arrested. *Id.* at 183. Thereafter, a jury convicted Thompson of possession of a controlled substance with intent to deliver near a park and obstructing an officer. *Id.*

¶ 18. After being convicted, Thompson moved for a new trial, asserting that his trial counsel was ineffective in failing to argue that an officer's presence in the emergency and operating rooms violated Thompson's right to confidentiality in his medical records under Wis. Stat. § 146.82, which constituted an allegedly meritorious basis for suppressing the evidence under the Fourth Amendment. *Thompson*, 222 Wis. 2d at 183. The trial court denied the motion, concluding that § 146.82 was inapplicable because the officer did not gain access to medical records and that, because the officer was lawfully in the emergency and operating rooms, the officer could confiscate contraband within his plain view. *Thompson*, 222 Wis. 2d at 183. Thompson appealed.

370

¶ 19. On appeal, Thompson argued that under WIS. STAT. § 146.82, the police should not have been allowed into the area where he was being treated. *Thompson*, 222 Wis. 2d at 184. We rejected this argument and held that, by its terms, § 146.82 "applies only to records." *Thompson*, 222 Wis. 2d at 188.

¶ 20. Hagerman's verbal statements based upon her observations are no more protected by WIS. STAT. § 146.82 than the medical procedures at issue in *Thompson*. Accordingly, under *Thompson*, there is no evidence of a violation of § 146.82 because there is no claim or evidence that Hagerman disclosed health care records.[9]

¶ 21. The circuit court properly denied Straehler's motion to suppress because, even if we assume that the release of Straehler's health information by Hagerman was in violation of HIPAA and/or WIS. STAT. § 146.82, the remedy is not suppression.

*By the Court.*—Judgment affirmed.

---

[9] Whether Hagerman disclosed information that ultimately ended up in Straehler's patient health care records cannot be determined from the record.