COURT OF APPEALS
DECISION
DATED AND FILED

July 27, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP907**

STATE OF WISCONSIN

Cir. Ct. No. **2021CV670**

IN COURT OF APPEALS
DISTRICT IV

---

VALVREE MOSLEY,

    PLAINTIFF-APPELLANT,

V.

OAKWOOD LUTHERAN SENIOR MINISTRIES,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Valvree Mosley appeals a circuit court order dismissing her claims against Oakwood Lutheran Senior Ministries ("Oakwood").

Mosley alleges that Oakwood shared the contents of her COVID-19 test results with its employees without her authorization. Mosley brought claims against Oakwood under WIS. STAT. § 146.82 (2021-22),[1] which governs confidentiality of patient health care records, and WIS. STAT. § 995.50(2)(am)3., which provides a cause of action for invasion of privacy. The circuit court granted Oakwood's motion to dismiss for failure to state a claim and entered an order dismissing Mosley's operative complaint in its entirety. For the reasons stated below, we affirm the circuit court order.

## BACKGROUND

¶2    The following background summary consists of allegations made by Mosley in her operative complaint. *See **Cattau v. National Ins. Servs. of Wis., Inc.**,* 2019 WI 46, ¶4, 386 Wis. 2d 515, 926 N.W.2d 756 (all well-pleaded facts in a complaint must be accepted as true on a motion to dismiss). Mosley worked as a food services employee for Oakwood at its Prairie Ridge Campus in Madison, Wisconsin, from approximately August 2018 to May 2021. Oakwood's Prairie Ridge Campus is a senior living community that offers residences and varying levels of support and care to people in their retirements.

¶3    On June 15, 2020, Mosley reported to work and went through Oakwood's COVID-19 screening process. After answering "yes" to one of the screening questions about COVID-19 symptoms, Mosley was turned away from work. During this period, in mid-June 2020, the COVID-19 pandemic had only

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

recently been publicly recognized and potential vaccines were still in development.

¶4    Mosley called her supervisor, Ellen Ritter, to explain that she had been turned away from work during the COVID-19 screening process. Mosley alleges that Ritter directed her to obtain a COVID-19 test at the Alliant Energy Center, which Mosley did that same day. The testing was organized by Public Health Madison and Dane County (PHMDC), but the actual testing was conducted at Exact Sciences Laboratory in Madison. Mosley alleges that she called Ritter after being tested, and that Ritter angrily demanded a written copy of her test result. Mosley alleges that it was clear to her that Ritter thought that she was lying about her COVID-19 symptoms and trying to extend the length of her previously approved vacation. Two days later, a PHMDC nurse notified Mosley that Mosley had tested positive for COVID-19. The nurse emailed Mosley a copy of her test result as a secure attachment. Mosley tried to forward the email containing her test result to Ritter, but was unable to do so because of its encrypted nature. Mosley then authorized the nurse to email her test result directly to Ritter, which the nurse did.

¶5    The following day, on June 18, 2020, Oakwood informed its employees at its Prairie Ridge Campus by memo that a campus employee had tested positive for COVID-19 and that the employee last worked on campus on June 10, 2020. The memo did not identify Mosley by name, but Mosley alleges that she was the employee referenced in the memo. A few days after the memo was released, Mosley received a message from one of her coworkers through the social media service, Snapchat, which stated: "Emily telling everyone you go[t] corona, is that true?" Mosley alleges that the reference to "Emily" in the message was to Emily Ganser, a supervisor of the dietary aides at Oakwood's Prairie Ridge

Campus. Mosley alleges that Ritter frequently confided in and sought advice from Ganser about workplace issues; therefore, Ritter likely shared the contents of Mosley's test result with Ganser, who subsequently told "everyone" that Mosley tested positive for COVID-19.

¶6     The same day that Mosley received the Snapchat message from her coworker, Mosley tried calling Ritter, but Ritter did not answer or return Mosley's call. Also on that day, Mosley called the same PHMDC nurse who had informed her about her test result and told the nurse about the message she received from her coworker. The nurse confirmed to Mosley that the nurse had sent the test result only to Ritter, not to Ganser or to anyone else.

¶7     When Mosley next reported to work on June 29, 2020, four of Mosley's coworkers asked her what it was like having COVID-19. Mosley alleges that, when she asked them how they knew about her test result, they told her that Ganser had told them that Mosley had tested positive for COVID-19. Following the interaction with her coworkers, Mosley confronted Ritter, who denied telling Ganser about the test result.

¶8     Mosley brought this action, alleging four claims against Oakwood in her operative complaint.[2] Mosley alleges three claims under WIS. STAT. § 146.82:

---

[2] Mosley's original complaint alleged three claims, two under WIS. STAT. § 146.82(1)(a) and (1)(b) (intentional and negligent disclosure of confidential patient health care records, respectively), and one for invasion of privacy under WIS. STAT. § 995.50. After the circuit court issued a written decision dismissing her original complaint, Mosley moved for leave to file an amended complaint and filed a proposed amended complaint, the operative complaint here. The court granted Mosley's motion for leave to amend her complaint, and construed Oakwood's motion in opposition as a motion to dismiss the amended complaint. The court ultimately dismissed the amended complaint and, in its oral ruling, incorporated by reference its prior written decision.

one claim for Oakwood's alleged release of her patient health care record under § 146.82(1), and two claims for Oakwood's alleged redisclosure of the record under § 146.82(5)(b) and (c). Mosley's fourth claim is for invasion of privacy under WIS. STAT. § 995.50. Oakwood filed a motion to dismiss all of Mosley's claims for failure to state a claim upon which relief can be granted.

¶9 The circuit court granted Oakwood's motion and dismissed all four claims. With respect to WIS. STAT. § 146.82(1), the court determined that Mosley's claim fails because Mosley fails to allege a patient-health care provider relationship between Mosley and Oakwood. Regarding Mosley's two claims under § 146.82(5), the court concluded that Mosley fails to allege facts showing a redisclosure outside of Oakwood, nor could the court reasonably infer that such a redisclosure occurred.

¶10 As to Mosley's invasion of privacy claim, the circuit court determined that Mosley fails to allege sufficient facts satisfying the following two elements of WIS. STAT. § 995.50: (1) that the disclosure of the positive test result would be highly offensive to a reasonable person with ordinary sensibilities; or (2) that Oakwood acted unreasonably or recklessly as to whether there was a legitimate public interest in her positive test result.

¶11 Mosley appeals.

## DISCUSSION

### I. Standard of Review and Applicable Principles of Law

¶12 A party may file a motion to dismiss on the ground that a complaint fails to state a claim upon which relief can be granted. WIS. STAT. § 802.06(2)(a)6. We review de novo a circuit court's order granting a motion to

5

dismiss. ***Data Key Partners v. Permira Advisers LLC***, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. "Upon a motion to dismiss, we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." ***Id.***, ¶19 (quoting ***Kaloti Enters., Inc. v. Kellogg Sales Co.***, 2005 WI 111, ¶11, 283 Wis. 2d 555, 699 N.W.2d 205). We "cannot add facts in the process of construing a complaint" and do not accept any legal conclusions asserted in the complaint. ***Id.***, ¶¶18-19. The sufficiency of a complaint depends on the substantive law that underlies the claim, and the alleged facts must plausibly suggest that the plaintiff is entitled to relief. ***Id.***, ¶31.

¶13     This appeal also requires that we interpret statutes. "Statutory interpretation presents a question of law that we review de novo." ***State v. Stewart***, 2018 WI App 41, ¶18, 383 Wis. 2d 546, 916 N.W.2d 188. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory interpretation 'begins with the language of the statute.'" ***Id.***, ¶45 (quoted source omitted). "If the meaning of the statute is plain, we ordinarily stop the inquiry." ***Id.*** (internal quotations and quoted source omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***Id.*** Additionally, statutory language must be "interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.***, ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied

according to this ascertainment of its meaning." *Id.* (internal quotation marks and quoted source omitted).

## II. WISCONSIN STAT. § 146.82

¶14 WISCONSIN STAT. § 146.84 is titled "Violations related to patient health care records." Under § 146.84(1)(b), "[a]ny person … who violates [WIS. STAT. §] 146.82 … in a manner that is knowing and willful shall be liable to any person injured as a result of the violation …." Pursuant to § 146.84(1), Mosley brings three claims alleging violations under § 146.82: § 146.82(1), (5)(a), and (5)(b). Section 146.82 is titled "Confidentiality of patient health care records," and the subsections at issue provide:

> **(1)** CONFIDENTIALITY. All patient health care records shall remain confidential. Patient health care records may be released only to the persons designated in this section or to other persons with the informed consent of the patient or of a person authorized by the patient .…
>
> **….**
>
> **(5)** REDISCLOSURE.
>
> .…
>
> **(b)** Notwithstanding sub. (1) …, a covered entity may redisclose a patient health care record it receives under this section without consent by the patient or person authorized by the patient if the redisclosure of the patient health care record is a release permitted under this section.
>
> **(c)** Notwithstanding sub. (1), an entity that is not a covered entity may redisclose a patient health care record it receives under this section only under one of the following circumstances:
>
> **1.** The patient or a person authorized by the patient provides informed consent for the redisclosure.
>
> **2.** A court of record orders the redisclosure.

**3.** The redisclosure is limited to the purpose for which the patient health care record was initially received.

¶15    As this statutory language makes clear, there must be a release or redisclosure of "patient health care records" for liability to attach under WIS. STAT. § 146.82.  The phrase, "patient health care records" is defined in pertinent part as "all records related to the health of a patient prepared by or under the supervision of a health care provider." WIS. STAT. § 146.81(4).  Here, Mosley did not allege that either Ritter or Ganser released or redisclosed an actual "record." Instead, she alleged that:  she authorized the PHMDC nurse to provide the COVID-19 test result to Ritter, the nurse provided the test result to Ritter, Ritter told Ganser the result, and Ganser informed at least four other employees of the result.  We conclude that the communications alleged do not constitute a violation under § 146.82 because they do not involve release or redisclosure of a patient health care *record*.  Accordingly, we affirm the circuit court's dismissal of Mosley's three claims under § 146.82.[3]

¶16    Our interpretation of WIS. STAT. § 146.82 is supported by a plain language interpretation of the statute and pertinent case law.  Subsection (1) of § 146.82 states: "All patient health care *records* shall remain confidential.  Patient health care *records* may be released only to the persons designated in this section or to other persons with the informed consent of the patient …."  (Emphasis added.)  Likewise, § 146.82(5)(b) and (c) both discuss redisclosure of "a patient

---

[3] It is not entirely clear whether the circuit court's dismissal of Mosley's claims under WIS. STAT. § 146.82 was based in part on the conclusion that the disclosures at issue do not involve a patient health care record in addition to the court's conclusion that Mosley fails to show a patient-health care provider relationship between herself and Oakwood.  Regardless, this court may affirm a circuit court's ruling on a question of law on a ground different from that relied on by the circuit court.  *See State v. Gribble*, 2001 WI App 227, ¶27 n.10, 248 Wis. 2d 409, 636 N.W.2d 488.

health care *record*." (Emphasis added.) Other provisions of § 146.82 also refer to patient health care "records" or "record." *See* § 146.82(2)(a) ("Notwithstanding sub. (1), patient health care *records* shall be released upon request without informed consent in the following circumstances .…") (emphasis added); *see also* § 146.82(2)(a)2., 3., 6., 8., 11., 11m, 12., 18m., 20., and 21.; § 146.82(2)(c), (cm); § 146.82(4).

¶17 Given this unambiguous statutory language, it is not surprising that this court has expressly limited the application of WIS. STAT. § 146.82 and the definition of "patient health care records" in WIS. STAT. § 146.81(4) to situations involving actual records. *See* ***Wall v. Pahl***, 2016 WI App 71, ¶¶28-29, 371 Wis. 2d 716, 886 N.W.2d 373 (concluding that the definition of "patient health care records" in § 146.81(4) has "three salient facets," the first of which is that "a patient health care record must be a 'record'" and not "mere information," and further concluding that plaintiff's complaint failed to state a claim, in part because plaintiff did "not allege [that defendant] withheld any "*record*") (emphasis in original);[4] ***State v. Thompson***, 222 Wis. 2d 179, 188, 585 N.W.2d 905 (Ct. App. 1998) ("By its terms, [§ 146.82] applies to only records .…"); ***State v. Straehler***, 2008 WI App 14, ¶¶15, 16, 19, 307 Wis. 2d 360, 745 N.W.2d 431 (2007) (concluding that "[t]he plain language of WIS. STAT. § 146.82 states that it applies to patient health care records," and noting that in ***Thompson*** we "held that [§ 146.82] does not reach beyond protection of health care records").

---

[4] ***Wall v. Pahl***, 2016 WI App 71, ¶¶28-29, 371 Wis. 2d 716, 886 N.W.2d 373, discusses this definition in the context of addressing the plaintiff's claim under WIS. STAT. § 146.83(4)(b) (concealing or withholding a patient health care record) rather than the statute at issue here, WIS. STAT. § 146.82. However, both statutes address "patient health care record[s]" and the definition in WIS. STAT. § 146.81(4) applies to both.

¶18     We are not persuaded by Mosley's efforts to refute the unambiguous language of WIS. STAT. §§ 146.82 and 146.81(4) and distinguish controlling precedent.  Mosley argues that "the statutory text" and "common sense" "dictate that [§] 146.82 protects the confidentiality of the contents of health care records." As purported support, she relies on WIS. STAT. § 146.84(2)(b) and (c), which provide penalties for any person who negligently or intentionally "discloses confidential information in violation of [§] 146.82."  This statutory language does not assist Mosley, however, because it expressly refers to a "violation of [§] 146.82," which, as set forth above, prohibits (with certain exceptions) the unauthorized release or redisclosure of "patient health care records."

¶19     Mosley also directs us to language from this court's opinion in *Wisconsin Manufacturers & Commerce v. Evers*, 2021 WI App 35, 398 Wis. 2d 164, 960 N.W.2d 442, *affirmed*, 2022 WI 38, ___ Wis. 2d ___, 977 N.W.2d 374. First, she relies on our statement that "the rights covered by the substantive provision in [WIS. STAT.] §§ 146.82 and 146.83 are those of patients as individuals and concern 'the release of [their] confidential information.'"  *Id.*, ¶22 (second alteration in original; quoted source omitted).  Mosley's reliance on this language is misplaced.  A patient health care record is undisputedly "confidential information."  Thus, our statement in *Evers* that §§ 146.82 and 146.83 concern the release of patients' "confidential information" is not inconsistent with our precedent that limits the reach of § 146.82 to actual records.  Our statement does not support Mosley's position that information obtained from a patient health care record and verbally conveyed to another may form the basis of a violation under § 146.82.

¶20     Mosley also relies on a footnote from our *Evers* opinion, in which, after we note our prior conclusions in *Thompson* and *Straehler* "that the statutory

10

definition [of patient health care records] does not encompass information that is merely derived from a record," we further state as follows: "We express no view as to whether some other scenarios might present a close question as to whether the content of released information so closely matches the content of a record that the release of the information is the functional equivalent of release of the record." *Evers*, 398 Wis. 2d 164, ¶24 & n.9. Significantly, however, our supreme court clarified on a motion for reconsideration that this footnote has no precedential value. *Wisconsin Mfrs. & Com. v. Evers*, 2023 WI 5, ¶2, 405 Wis. 2d 478, 984 N.W.2d 402 ("footnote 9 of the court of appeals' decision has no precedential value."). Thus, the language upon which Mosley relies is of no assistance.

¶21 Mosley is likewise unsuccessful in seeking to distinguish our precedent in *Pahl*, *Thompson*, and *Straehler*. Mosley attempts to distinguish these cases based on their differing facts, suggesting that our conclusions in those cases were limited to the specific facts presented. We reject Mosley's arguments because they fail to come to terms with the express rulings in those cases that WIS. STAT. § 146.82 and the definition of "patient health care records" in WIS. STAT. § 146.81(4) limits the application of those provisions to situations involving actual records.

¶22 Mosley also argues that an interpretation of "patient health care records" that limits its application to actual records would create "absurd" results because "[a]ny time someone wanted to release a patient health care record but WIS. STAT. § 146.82 forbid[s] the release, the person could simply state the information from the record out loud instead of providing a copy of the record."[5]

---

[5] We note that both the circuit court and Oakwood present "absurd" scenarios if Mosley's interpretation of WIS. STAT. § 146.82 were adopted. The court stated that, under

(continued)

11

We reject this argument. Instead, we take the same approach we took in ***Thompson*** when presented with the argument that "an interpretation limiting the application of § 146.82 … exclusively to medical records produces an absurd result," and we again conclude that there is "no absurdity in confining the scope of § 146.82 … to the plain language of its provisions." ***Thompson***, 222 Wis. 2d at 188-89.

¶23 Moreover, even if we were inclined to adopt the expansive interpretation of "patient health care records" that Mosley advances, we would be prohibited from doing so because we are bound by our precedent that expressly limits the scope of WIS. STAT. § 146.82 to violations involving disclosures of patient health care *records*. *See* ***Cook v. Cook***, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) (the court of appeals is bound by its own prior precedent and may not overrule, modify, or withdraw language from its prior published opinions).

¶24 In sum, we conclude that Mosley fails to state a claim upon which relief can be granted under WIS. STAT. § 146.82 because she does not allege that

---

Mosley's interpretation of this statute, "if A, a patient, told B about A's medical diagnosis and B told C about A's diagnosis, liability under this statute would attach to B if A did not want C to know about the diagnosis." The court reasoned that "[t]o impose liability in this context, would impose liability, essentially, for gossip." Similarly, Oakwood argues that, if we adopt Mosley's interpretation of § 146.82, "then a person who texts a screenshot of her positive COVID-19 test result to her mother would be a potential plaintiff against her mother as soon as her mother tells her sister." We need not address these potential scenarios, given our determination that, under the unambiguous statutory language and our precedent interpreting it, Mosley's § 146.82 claims fail because they do not involve Oakwood's disclosure of a patient health care record.

Oakwood released or disclosed her "patient health care record," as that phrase has been interpreted by our precedent.[6]

## III. Invasion of Privacy Claim

¶25    Mosley argues that the circuit court erred in dismissing her claim under WIS. STAT. § 995.50(2)(am)3. for invasion of privacy.  Pursuant to § 995.50, "[t]he right of privacy is recognized in this state," and "[o]ne whose privacy is unreasonably invaded is entitled" to various forms of relief, including compensatory damages and reasonable attorney fees.    Sec.  995.50(1). Section 995.50(2)(am) recognizes four categories of invasion of privacy claims, including the claim at issue here:    public disclosure of private facts. Section 995.50(2)(am)3. defines this cause of action, in relevant part, as follows:

> Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed.

¶26    A plaintiff must satisfy four elements to prove an invasion of privacy claim under WIS. STAT. § 995.50(2)(am)3.:

> (1) a public disclosure of facts regarding the plaintiff; (2) the facts disclosed are private facts; (3) the private matter made public is one which would be highly offensive to a reasonable person of ordinary sensibilities; and (4) the

---

[6] Because we affirm the circuit court's decision on the ground that Mosley failed to allege that Oakwood released or redisclosed an actual patient health care record, we do not address Oakwood's other arguments for affirming the court's order dismissing Mosley's claims under WIS. STAT. § 146.82.  *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

> defendant acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed.

*Pachowitz v. LeDoux*, 2003 WI App 120, ¶18, 265 Wis. 2d 631, 666 N.W.2d 88. Because we agree with the circuit court that Mosley fails to a state a claim with respect to the third element—that the private matter made public is one which would be highly offensive to a reasonable person of ordinary sensibilities—we do not address the parties' arguments with respect to the other elements for invasion of privacy. *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (appellate court need not address every issue raised by parties when one issue is dispositive).

¶27 In analyzing this element, "the statute must be interpreted relative to the customs of the time and place, to the occupation of the plaintiff, and to the habits of neighbors and fellow citizens." *Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 930, 440 N.W.2d 548 (1989) (citing RESTATEMENT (SECOND) OF TORTS, § 652D, cmt. c.). "It is only when the publicity given is such that a reasonable person would feel justified in feeling seriously aggrieved by it that a cause of action arises." *Id.* In examining this element relative to the "customs of the time and place," Mosley's occupation, and the "habits of … fellow citizens," we observe the following.

¶28 First, it is undisputed that, even by June 2020 (when Mosley contracted the virus), it was well known that COVID-19 is a highly contagious virus that had generally made its way to populations around the world. It is also undisputed that, because of the contagiousness of the virus, voluntary disclosure of one's positive COVID-19 test has been customary since the beginning of the pandemic so that family, friends, and coworkers may test themselves and isolate

from others. Moreover, as the circuit court observed, and as both parties agree, the virus has a greater impact on vulnerable populations, such as older individuals living in a senior living facility like Oakwood.

¶29 Viewing the disclosure of Mosley's positive COVID-19 test result in this context, we conclude that the information allegedly disclosed is not the type of information that a reasonable person of ordinary sensibilities would find "highly offensive." Nor is a positive COVID-19 test result the type of information that would prompt a reasonable person to become "seriously aggrieved" by its disclosure, given the highly contagious nature of COVID-19, its transmission through everyday interactions, and the wide-spread voluntary disclosure of positive test results. This is particularly true in the context of this case. The alleged disclosure occurred to a small group of Mosley's coworkers in a senior living facility, where those to whom the disclosure was allegedly made might well be seriously concerned as to whether they or other residents in the facility were exposed to the virus through Mosley during a time period in which a vaccine was not available.

¶30 In reaching this conclusion, we also deem it significant that a claim under WIS. STAT. § 995.50(2)(am)3. requires more than that the information shared was "private," which is a separate element of the claim. It is also insufficient under this provision that the information disclosed be simply "offensive." Instead, a claim under § 995.50(2)(am)3. requires that the disclosed information be "highly offensive." *See* **Pachowitz**, 265 Wis. 2d 631, ¶18 (emphasis added). Significantly, Mosley provides no Wisconsin case law, or for that matter persuasive authority, that supports her position that a positive COVID-19 test is the type of information whose disclosure would be considered highly offensive to a reasonable person of ordinary sensibilities.

¶31 Although there is a paucity of Wisconsin case law specifically addressing the "highly offensive" factor, we note that in those cases in which our appellate courts have upheld invasion of privacy actions, the information conveyed was far more private and potentially embarrassing than the information allegedly conveyed in this case. *See **Hillman v. Columbia Cnty.**,* 164 Wis. 2d 376, 394-95, 474 N.W.2d 913 (Ct. App. 1991) (jail detainee's complaint stated claim for invasion of privacy by alleging that jail employees informed other staff and inmates of detainee's infection with HIV virus); ***Pachowitz***, 265 Wis. 2d 631, ¶¶5, 27 (upholding jury's finding for invasion of privacy when an EMT disclosed plaintiff's drug overdose to plaintiff's coworker, who then informed other coworkers; court noted that the evidence allowed for the inference that coworkers' knowledge of drug overdose would "embarrass" plaintiff); ***Zinda***, 149 Wis. 2d at 918, 930 (concluding that plaintiff established prima facie case for invasion of privacy when his employer published an internal company newsletter that included information that plaintiff was terminated from employment for falsification of employment forms).

¶32 As to persuasive authority from other jurisdictions, our nonexhaustive research reveals a single case involving disclosure of a person's positive COVID-19 status, which, as in this case, occurred during the earlier part of the COVID-19 pandemic. In ***Archie v. Smith***, 2020 WL 6938360, *2 (D. N.J. Nov. 25, 2020), a federal district court concluded that an inmate who a jail employee identified to other inmates and staff as having COVID-19 failed to state a claim for violation of a constitutional right to medical privacy because "COVID-19 is not an 'unusual medical condition' that would likely expose a person to ridicule or discrimination." That rationale applies here. Moreover, as noted, Mosley provides no authority in which the disclosure of a positive COVID-19 test

16

result, or other analogous information, was deemed highly offensive to a reasonable person of ordinary sensibilities.

¶33    In lieu of presenting any supporting authority, Mosley argues that revealing that she had a positive COVID-19 test result was highly offensive because it could have caused her to be labeled "patient zero" at an assisted living facility with a vulnerable population, which could have caused family and friends of individuals at the facility who got COVID-19 to potentially blame Mosley. Notably, however, the case before us does not involve an allegation that others at Oakwood were ever exposed to COVID-19, through Mosley or otherwise. Nor were sufficient facts alleged in the complaint that would support a conclusion or inference that if others in Oakwood were to become infected with COVID-19, Mosley would be viewed as the source. *See **Doe v. Archdiocese of Milwaukee***, 2005 WI 123, ¶¶6, 19, 36, 284 Wis. 2d 307, 700 N.W.2d 180 (court may not add unpled facts to complaint and complaint is properly dismissed where it "requires the court to indulge in too much speculation leaving too much to the imagination of the court") (internal quotation marks and quoted source omitted). We therefore reject this argument.

¶34    Mosley also points out that some federal and state governmental agencies—such as the Centers for Disease Control, the United States Equal Employment Opportunity Commission, the Department of Health and Human Services, and the Wisconsin Department of Health Services—have guidelines for privacy, which, according to Mosley, support the conclusion that an employer should maintain the confidentiality of an employee's identity when the employee tests positive for COVID-19. Although these agency recommendations may be good practice, or may even be required by other federal or state law, they do not assist us in determining what is "highly offensive to a reasonable person of

17

ordinary sensibilities" in an action for invasion of privacy under WIS. STAT. § 995.50(2)(am)3.

¶35    In sum, because Mosley fails to state a claim for invasion of privacy, the circuit court properly dismissed that claim.

## CONCLUSION

¶36    For the reasons stated, we affirm the order of the circuit court dismissing Mosley's claims related to patient health care records under WIS. STAT. § 146.82 and her invasion of privacy claim under WIS. STAT. § 995.50(2)(am)3.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.